# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

# FILED

## AUG 1 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
(a/k/a FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,

DEFENDANT(S).

# SUPERSEDING INDICTMENT

VIOLATIONS:
21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances;
21 U.S.C. § 841 – Distribution of Controlled Substances;
18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs;
21 U.S.C. §§ 331, 333, and 353 – Misbranding Drugs;
18 U.S.C. § 1956 - Conspiracy to Launder Money;
18 U.S.C. §§ 982; 21 U.S.C. § 853 and 28 U.S.C. § 2461 – Forfeiture

A true bill.

_Nancy J Peterson_
Foreman

Filed in open court this _14th_ day of

_August 2014_.

_[signature]_
Clerk

Bail, $ _No Service_

_Nathanael Cousins_
United States Magistrate Judge

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

—— OFFENSE CHARGED ——

See Attached
☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  See Attached

— DEFENDANT - U.S ——

FEDEX CORP., FEDERAL EXPRESS CORP. (A/K/A FEDEX EXPRESS), FEDEX CORPORATE SERVICES, INC. ■

DISTRICT COURT NUMBER

CR 14-0380 CRB

**FILED**

AUG 1 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

—— PROCEEDING ——

Name of Complainant Agency, or Person (& Title, if any)

DEA, FDA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
}  SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}  MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form  MELINDA HAAG

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)  KIRSTIN M. AULT

—— DEFENDANT ——

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction
}  ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes  If "Yes"
been filed?  ☐ No  } give date filed

DATE OF ARREST ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

—— ADDITIONAL INFORMATION OR COMMENTS ——

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

Comments:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:  Before Judge:

AUG 1 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## ATTACHMENT TO PENALTY SHEET

**Counts 1 and 13**: 21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances
Maximum Penalties:

*For conduct prior to April 13, 2009*:

5 years of probation and a fine of up to $1,000,000 or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

*For conduct after April 13, 2009*:

5 years of probation and a fine of up to $2,500,000 (Schedule III) or $1,000,000 (Schedule IV), or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

**Counts 2-10 and 14-15**: 21 U.S.C. § 841 – Distribution of Controlled Substances
Maximum Penalties:

Same as for Counts 1 and 12.

**Counts 11 and 16**: 18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs
Maximum Penalties

5 years of probation and a fine of up to $500,000 or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

**Counts 12 and 17-18**: 18 U.S.C. § 1956 – Conspiracy to Launder Money
Maximum Penalties:

5 years of probation and a fine of up to $500,000 or twice the value of the property involved in the offense or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

**Forfeiture**: 18 U.S.C. § 982; 21 U.S.C. § 853, and 28 U.S.C. § 2461

Any property constituting or derived from any proceeds defendants obtained, directly or indirectly, as a result of the violations and any property used or intended to be used to commit or facilitate the commission of the violations, as well as any property traceable to such property and any substitute assets.

1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,              ) NO. CR 14-380 CRB
                                          )
12       Plaintiff,                        ) VIOLATIONS: 21 U.S.C. § 846 – Conspiracy to
                                          ) Distribute Controlled Substances;
13       v.                                ) 21 U.S.C. § 841 – Distribution of Controlled
                                          ) Substances;
14  FEDEX CORPORATION,                     ) 18 U.S.C. § 371 – Conspiracy to Distribute
    FEDERAL EXPRESS CORPORATION,          ) Misbranded Drugs;
15  (A/K/A FEDEX EXPRESS), and             ) 21 U.S.C. §§ 331, 333, and 353 – Misbranding Drugs;
    FEDEX CORPORATE SERVICES, INC.,       ) 18 U.S.C. § 1956 – Conspiracy to Launder Money;
16                                         ) 18 U.S.C. §§ 982; 21 U.S.C. § 853 and 28 U.S.C.
         Defendants.                       ) § 2461 – Forfeiture
17                                         )
                                          ) SAN FRANCISCO VENUE
18

19                      S U P E R S E D I N G  I N D I C T M E N T

20  The Grand Jury charges:

21                        INTRODUCTORY ALLEGATIONS

22       At all times relevant to this Superseding Indictment:

23                                Defendants

24       1.      Defendants FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION

25  ("FEDEX EXPRESS"), and FEDEX CORPORATE SERVICES, INC. ("FEDEX SERVICES")

26  (collectively, "FEDEX"), were package delivery companies and providers of specialized transportation

27  and logistics services that delivered packages to persons located in the Northern District of California

28  and throughout the United States. FEDEX EXPRESS and FEDEX SERVICES were wholly owned

SUPERSEDING INDICTMENT
CR 14-380 CRB

**FILED**

AUG 1 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  subsidiaries of FEDEX CORPORATION.

2  Summary of Alleged Conduct

3  A.  Illegal Internet Pharmacies

4  2.  Beginning in approximately 1998, numerous companies began offering consumers
5  prescription drugs, including controlled substances, based on the provision of information over the
6  Internet. These companies came to be known as Internet or online pharmacies, both terms used
7  interchangeably throughout this Superseding Indictment. Some Internet pharmacies were managed by
8  well-known pharmacy chains that required valid prescriptions and visits to the patient's personal
9  physician before an order was filled. Others failed to require a prescription before filling orders for any
10  drugs, and distributed controlled substances and prescription drugs based solely on the completion of an
11  online questionnaire, without a physical examination, diagnosis, or face-to-face meeting with a
12  physician. Such practices violated federal and state laws governing the distribution of prescription drugs
13  and controlled substances.

14  3.  Internet pharmacies generally operated websites that advertised the sale of various
15  controlled substances and prescription drugs. Through the websites, customers typically placed orders
16  for drugs by answering an online questionnaire calling for basic information such as height, weight and
17  date of birth, making payment arrangements, and providing a shipping address. Internet pharmacies
18  worked with fulfillment pharmacies that carried an inventory of controlled substances and prescription
19  drugs. After filling the order referred by the Internet pharmacy, the fulfillment pharmacy delivered the
20  drugs to the customer by a shipper such as FEDEX.

21  4.  From at least as early as 2004, on no less than six different occasions, the DEA, FDA, or
22  members of Congress and their staff informed FEDEX that illegal Internet pharmacies were using its
23  shipping services to distribute controlled substances and prescription drugs in violation of the Controlled
24  Substances Act (CSA) and Food Drug and Cosmetic Act (FDCA). These government officials informed
25  senior FEDEX management that a prescription based solely on a customer's completion of an online
26  questionnaire was invalid and that controlled substances and prescription drugs dispensed based on such
27  an invalid prescription were distributed in violation of the CSA, FDCA, and numerous state laws. The
28  government officials similarly informed FEDEX that doctors writing such prescriptions and pharmacists

SUPERSEDING INDICTMENT                    2
CR 14-380 CRB

1  filling them were acting outside the usual course of professional practice and not for a legitimate
2  medical purpose, according to guidelines published by the American Medical Association (AMA),
3  Federation of State Medical Boards (FSMB), and National Association of Boards of Pharmacy (NABP).

4  B.      The Chhabra-Smoley Organization and Superior Drugs

5       5.      During the time covered by this Superseding Indictment, FEDEX shipped controlled
6  substances and prescription drugs for two illegal Internet pharmacy organizations, among others: (1) the
7  Chhabra-Smoley Organization, which operated a network of illegal Internet and fulfillment pharmacies
8  through its principals Vincent Chhabra and Robert Smoley, and (2) Superior Drugs, which was an illegal
9  fulfillment pharmacy that filled drug orders for illegal Internet pharmacies. FEDEX knew that the
10  Chhabra-Smoley Organization and Superior Drugs were each distributing controlled substances and
11  prescription drugs based solely on a customer's completion of an online questionnaire, and that these
12  organizations were distributing drugs outside the usual course of professional practice and not for a
13  legitimate medical purpose in violation of the law. Nevertheless, FEDEX continued to ship controlled
14  substances and prescription drugs for the Chhabra-Smoley Organization and Superior Drugs.

15       6.      In 2003, the DEA shut down RxNetwork, the Chhabra-Smoley Organization's primary
16  fulfillment pharmacy, and Chhabra was arrested for violating the CSA. FedEx learned of these events
17  promptly after they occurred, but FEDEX continued to distribute controlled substances and prescription
18  drugs for the Chhabra-Smoley Organization through Internet and fulfillment pharmacies that were
19  controlled by and affiliated with Smoley and other members of the Chhabra-Smoley Organization.
20  FEDEX knew of the connection between these Internet and fulfillment pharmacies and RxNetwork and
21  Chhabra as demonstrated by the principals, company names, shipping addresses and billing addresses
22  that were initially connected to Chhabra and RxNetwork and remained common to Smoley and the
23  members of the Chhabra-Smoley Organization who continued operations after Chhabra's arrest.
24  FEDEX's employees explicitly recognized this connection. For example, in a discussion with FEDEX
25  managers in the Sales and Revenue Operations departments, one employee stated that the controller for
26  Smoley's Internet pharmacy Icom had two other Internet pharmacy accounts: RxNetwork and Dipardi
27  Pharmacy, another fulfillment pharmacy used by Chhabra prior to his arrest.

28       7.      In addition to knowing that Superior Drugs illegally distributed controlled substances and

SUPERSEDING INDICTMENT                    3
CR 14-380 CRB

1  prescription drugs based on an online questionnaire, FEDEX knew that Superior Drugs filled orders for
2  Internet pharmacies that were shut down by the DEA or other law enforcement agencies. FEDEX
3  further knew Superior Drugs would fill orders for Internet pharmacies after a fulfillment pharmacy they
4  had been using was shut down by law enforcement. Despite this knowledge, FEDEX continued to
5  distribute controlled substances and prescription drugs for Superior Drugs. For example, when the DEA
6  closed the Waterview fulfillment pharmacy in Maryland, employees in FEDEX's Sales department
7  discussed the fact that CNL Financial, an Internet pharmacy that had used Waterview, had transferred its
8  orders to Superior Drugs. FEDEX continued to ship controlled substances and prescription drugs for
9  CNL Financial from Superior Drugs.

10  C.    FEDEX's Internet Pharmacy Policies

11      8.    By 2004, illegal Internet pharmacies increasingly were being investigated and closed by
12  DEA and other law enforcement and government agencies, which in turn affected FEDEX's revenue.
13  During this time, Internet pharmacy customers were increasingly causing safety issues for FEDEX
14  drivers in their efforts to secure the controlled substances and prescription drugs they had ordered
15  online. In response to these issues, FEDX enacted policies and procedures that allowed FEDEX to
16  continue to ship controlled substances and prescription drugs for illegal Internet pharmacies while
17  protecting against lost revenue and addressing its employees' compensation and safety issues.

18      i.    *FEDEX's Online Pharmacy Credit Policy*

19      9.    In virtually all cases, when law enforcement closed an illegal Internet pharmacy, FEDEX
20  was unable to collect outstanding accounts payable from that customer. To address this issue, beginning
21  in June 2004, FEDEX established an Online Pharmacy Credit Policy that applied only to its Internet
22  pharmacy shippers. Under this policy, all Internet pharmacy shippers had to be approved by the Credit
23  Department prior to opening a new account. Existing Internet pharmacies had to be reviewed by the
24  Credit Department to ensure that they had adequate financial security. In arguing for the Online
25  Pharmacy Credit Policy, FEDEX's Managing Director of Revenue Operations stated "[a]s the past few
26  weeks have unfolded it is becoming more apparent to us that many of these companies are fraudulent
27  and doing business outside Federal regulations." After receiving this e-mail, FEDEX's Vice President
28  of Worldwide Revenue Operations approved FEDEX's continued shipment of drugs pursuant to the

SUPERSEDING INDICTMENT                    4
CR 14-380 CRB

1  proposed Online Pharmacy Credit Policy. The policy was also approved by FEDEX EXPRESS's Chief
2  Financial Officer and FEDEX SERVICES' President of Customer Information Services and Senior Vice
3  President of Sales.

4      10.    By 2006, FEDEX had strengthened the Online Pharmacy Credit Policy to require that all
5  online pharmacies be placed on restricted credit terms and provide FEDEX with a security deposit or
6  bank letter of credit. On July 6, 2006, the Credit Policy was circulated to FedEx's Managing Directors
7  of Sales with the following explanation for "Why this is important": "Many of these companies operate
8  outside federal and state regulations over the sale of controlled drugs, which require diagnosis and
9  prescription by a licensed physician. Drugs purchased from these sites may be diluted or counterfeit.
10  Several sites have been shut down by the government without warning or simply disappeared leaving
11  large balances owing to FEDEX."

12      11.    Beginning in 2004, FEDEX's Credit analysts maintained a list of FEDEX's online
13  pharmacy customers that was regularly reviewed by FEDEX's Senior Manager and Managing Director
14  of Revenue Operations. As of July 2004, FEDEX employees had identified over 200 accounts that were
15  associated with online pharmacies. By September of 2010, the list had increased to over 600 online
16  pharmacy accounts.

17      12.    On two occasions, in July of 2004 and December of 2005, FEDEX's Senior Vice
18  President of Corporate Security testified before congressional committees on the subject of the illegal
19  distribution of controlled substances and prescription drugs by online pharmacies. FEDEX's Senior
20  Vice President testified under oath that "[t]hese so-called Internet pharmacies are virtual entities and
21  cannot be linked by us to a shipping site, unless law enforcement makes that association for us."
22  However, in July of 2004, FEDEX's Credit Department had a list of more than 200 FEDEX accounts
23  that FEDEX employees had identified as Internet pharmacies and were able to link to a shipping site. In
24  December of 2005, there were more than 250 FEDEX accounts on FEDEX's list of Internet pharmacies
25  that FEDEX's employees were able to link to shipping sites.

26  ///
27  ///
28  ///

SUPERSEDING INDICTMENT    5
CR 14-380 CRB

*ii.* *FEDEX's Use of its "Catchall" Classification for Internet Pharmacies*

13. FEDEX maintained a Field Sales Department that was responsible for recruiting new customers for FEDEX with potential revenue of up to approximately $1 million. Within Field Sales, each employee was assigned a fiscal-year sales goal, which was a factor in FEDEX's Variable Compensation Plan. A Sales employee's goal was determined, in part, by the Sales employee's previous year sales. Each year, FEDEX's Sales employees were expected to increase the revenue in their territory. Any customers that were lost were expected to be replaced with new customers with an equal amount of revenue, so that the Sales employee could meet his or her goal for the year.

14. Beginning in 2004, Sales employees began to experience revenue losses due to the closure of online pharmacies by law enforcement. At the end of 2005, FEDEX's Sales Department began looking for a streamlined way to address the impact on the Field Sales executives' compensation caused by Internet pharmacy accounts quickly opening, shipping large amounts of express packages, and then being shut down by law enforcement.

15. FEDEX maintained a shipping account classification known as "catchall." Catchall accounts were not assigned to specific account executives and did not affect the yearly sales goals of account executives or their managers. In 2006, a group of FEDEX's Sales employees proposed that all online pharmacy accounts be assigned to the catchall classification because, as one Managing Director stated to the Vice President of Field Sales for the Eastern Region, "I can assure you that these types of accounts will always result in a loss at some point. They have a very short lifespan and will eventually be shut down by the DEA."

16. On March 29, 2007, a Senior Sales Analyst sent an e-mail to Sales employees informing them that any currently known online pharmacy accounts were to be moved to the "catchall" classification pursuant to an agreement between the Field Sales Vice Presidents. The stated reason for this policy was, "The internet pharmacy industry is governed by strict DEA laws. This type of business is generally very volatile in nature (i.e., here one day and gone the next). There are often numerous large volume shifts associated with internet pharmacies as they move the shipping location often to avoid detection from the DEA."

///

1

    *iii.    FEDEX's Holding of Shipments for Internet Pharmacy Customers*

2    17.    As early as 2004, FEDEX couriers and customer service agents in Kentucky, Tennessee,

3 and Virginia expressed safety concerns to their management, including the following: FEDEX trucks

4 had been stopped on the road by Internet pharmacy customers demanding packages of pills; delivery

5 addresses included parking lots, schools, and vacant homes where people would wait for deliveries of

6 drugs; customers would jump on FEDEX trucks and demand Internet pharmacy packages; FEDEX

7 drivers were threatened if they insisted on delivering a package to the address instead of giving the

8 package to the customer who demanded it; and customers would use multiple names and identification

9 documents to pick up packages of drugs.

10    18.    A FEDEX employee also raised concerns to FEDEX management that some recipients of

11 Internet pharmacy packages were engaged in "doctor shopping," were "known to be selling and using,"

12 and that "some of the recipients have overdosed and died."

13    19.    In response to these concerns, FEDEX's Senior Vice President of Security approved a

14 procedure whereby Internet pharmacy packages from problematic shippers were held for pick up at

15 specific stations, rather than delivered to the recipient's address. This policy was eventually expanded

16 to include all Internet pharmacy packages delivered to the stations that were experiencing concerns.

17    20.    FEDEX employees, including its Vice President of Worldwide Revenue Operations and

18 Managing Director of Security, were aware that its online pharmacy customers were shipping drugs to

19 drug addicts who had died after FEDEX delivered drugs to them, including:

20          a.    A customer service representative and Security manager in Kentucky discussed a

21                 recipient who was found dead of a drug overdose one day after she had picked up

22                 a package at a FEDEX station from an online pharmacy. The deceased woman

23                 was well known to FEDEX employees as she had been receiving multiple

24                 packages from online pharmacies.

25          b.    A memorandum drafted by FEDEX's Senior Manager of Revenue Operations and

26                 sent to FEDEX's Vice President of Worldwide Revenue Operations stated,

27                 "Many online pharmacy customers have been closed by the federal government

28                 due to fraud and illegal sales of controlled pharmaceutical products. In a recent

SUPERSEDING INDICTMENT       7
CR 14-380 CRB

1  case, a teenager died after being illegally supplied with a controlled drug that was

2  delivered by FEDEX."

3  21.  FEDEX delivered controlled substances and prescription drugs from online pharmacies to

4  individuals who subsequently died or accidentally caused the death of others, including but not limited

5  to on or about: August 6, 2002, November 8, 2005, February 24, 2006, March 16, 2006, and March 20,

6  2009.

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1 | **COUNT ONE**:    (21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances)

2 |      22.      Paragraphs 1 through 21 are realleged and reincorporated herein by reference.

3 |      23.      Beginning at a time unknown to the grand jury, but no later than January of 2000, and

4 | ending on or about February 20, 2008, in the Northern District of California and elsewhere, the

5 | defendants,

6 | FEDEX CORPORATION,<br>FEDERAL EXPRESS CORPORATION,
7 | (A/K/A FEDEX EXPRESS), and<br>FEDEX CORPORATE SERVICES, INC.,
8 |

9 | together with Vincent Chhabra, Sabina Faruqui, Robert Smoley, RxNetwork, United Mail Pharmacy

10 | Services, Icom Group, and others known and unknown to the grand jury, conspired to distribute, and to

11 | possess with intent to distribute outside the usual course of professional practice and not for a legitimate

12 | medical purpose one or more controlled substances, knowing and intending that the distribution and

13 | possession with intent to distribute was outside the usual course of professional practice and not for a

14 | legitimate medical purpose, which offense involved substances containing:  (a) Phendimetrazine, a

15 | Schedule III controlled substance; (b) Ambien, a Schedule IV controlled substance; (c) Phentermine, a

16 | Schedule IV controlled substance; (d) Diethylpropion, a Schedule IV controlled substance;

17 | (e) Diazepam, a Schedule IV controlled substance; (f) Alprazolam, a Schedule IV controlled substance;

18 | (g) Clonazepam, a Schedule IV controlled substance; and (h) Butalbital, a Schedule III controlled

19 | substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D) and (b)(2), all of

20 | which conduct was in violation of Title 21, United States Code, Section 846.

21 | Manner and Means of the Conspiracy

22 | It was part of the conspiracy that:

23 | A.     Operation of the Chhabra-Smoley Organization

24 |      24.      Unindicted co-conspirators Vincent Chhabra and Robert Smoley owned, operated and

25 | managed a widespread organization of Internet pharmacy websites, fulfillment pharmacies, and support

26 | systems for the purpose of providing controlled substances directly to consumers without valid

27 | prescriptions (the "Chhabra-Smoley Organization").

28 |      25.      The Chhabra-Smoley Organization consisted of websites with which Chhabra and

1 Smoley were affiliated, including get-it-on.com, cybrx.com, USAPrescription.com, myrxeasy.com,
2 ezrxovernight.com, fastplanetrx.com, ezmedsonline.com, and others, which offered for sale controlled
3 substances on Schedules III and IV, by means of the Internet, to customers who were only required to
4 complete an online questionnaire and were not examined, diagnosed, or contacted by the physicians who
5 issued the prescriptions in connection with their orders.

6     26. The Chhabra-Smoley Organization also included physicians whom Chhabra and Smoley
7 partnered with, recruited, and hired to review the customers' online questionnaires and to issue
8 prescriptions for controlled substances based solely upon the customers' responses.

9     27. The Chhabra-Smoley Organization also included fulfillment pharmacies that Chhabra
10 and Smoley owned, operated, partnered with, and recruited throughout the United States, including
11 RxNetwork, Next Generation Health Systems, Prescriptions & Travel, Prescription Resources,
12 Lakeridge Pharmacy, C&V Pharmacy, 2U Net-Mail (Choice Rx), Rx Direct, Dipardi Pharmacy, Falks
13 Lignell (Falk's Home Medical Supply), United Mail Pharmacy Services, United Care Pharmacy, Kwic
14 Fill, and Tri-Phasic Pharmacy, among others, to fill invalid prescriptions for controlled substances and
15 to ship those controlled substances to customers in the Northern District of California and elsewhere in
16 the United States.

17     28. The Chhabra-Smoley Organization also included employees and associates whom
18 Chhabra and Smoley hired to call, respond to calls, and send e-mails to existing and prospective
19 customers in the Northern District of California and elsewhere in the United States to solicit orders for
20 controlled substances and refills of invalid prescriptions for controlled substances.

21     29. Chhabra and Smoley arranged for the continuation of the Chhabra-Smoley Organization
22 following Chhabra's December 3, 2003, arrest on charges of violating the CSA, by entering into an
23 arrangement whereby Smoley assumed responsibility for the running of the Chhabra-Smoley
24 Organization.

25 B.     FEDEX's Shipment of Illegal Drugs for the Chhabra-Smoley Organization

26     30. FEDEX employees – including those who (a) negotiated and entered into the written
27 agreements with the Chhabra-Smoley Organization on behalf of FEDEX, (b) managed the Chhabra-
28 Smoley Organization accounts for FEDEX, and (c) maintained the Chhabra-Smoley Organization's

SUPERSEDING INDICTMENT     10
CR 14-380 CRB

1  business relationship with FEDEX, including its credit and payment terms – knew that the Chhabra-
2  Smoley Organization was distributing controlled substances based on prescriptions issued by doctors
3  after reviewing customers' responses to an online questionnaire.

4      31.    Chhabra and Smoley and their employees and associates entered into agreements with
5  FEDEX in which FEDEX agreed to ship packages for the Chhabra-Smoley Organization.  As part of
6  these agreements, FEDEX opened over 30 accounts for the Chhabra-Smoley Organization, which the
7  Chhabra-Smoley Organization used to illegally distribute controlled substances into the Northern
8  District of California and elsewhere in the United States.

9      32.    FEDEX's employees communicated on a regular basis with Chhabra, Smoley, and other
10  employees of the Chhabra-Smoley Organization in writing, by telephone, and in person regarding the
11  Chhabra-Smoley Organization's business trends, volume, and shipping and logistics needs.

12      33.    FEDEX employees visited the premises of the Chhabra-Smoley Organization, including
13  its headquarters and the locations of its fulfillment pharmacies.  These employees observed the Chhabra-
14  Smoley Organization's operations, including the taking of orders for controlled substances over the
15  telephone and Internet and the filling of orders for controlled substances.

16      34.    FEDEX employees observed packages from the Chhabra-Smoley Organization
17  containing pill bottles filled with controlled substances; FEDEX employees assisted with preparing these
18  packages for shipment and subsequently distributed these packages for the Chhabra-Smoley
19  Organization in the Northern District of California and throughout the United States.

20      35.    FEDEX employees and their contractors communicated with employees of the Chhabra-
21  Smoley Organization on a regular basis regarding lost, stolen, or delayed FEDEX shipments of
22  controlled substances.

23      36.    FEDEX employees knew that online pharmacies and fulfillment pharmacies affiliated
24  with the Chhabra-Smoley Organization were closed down by state and federal law enforcement
25  agencies, including the FDA and DEA, and that their owners, operators, pharmacists, and doctors were
26  indicted, arrested, and convicted of violating the CSA, including:

27      a.    On July 23, 2002, a FEDEX employee placed a note in FEDEX's electronic
28      account record for Rx Network, "Co has had its license suspended by the state of

Florida in an emergency order that said the pharmacy constitutes 'an immediate and serious danger.'"

b. On November 12, 2003, a FEDEX employee received an e-mail in which she was "advised Rx Network license was suspended for selling illegal prescriptions thru the internet – I forward email to [the Sales] A/E – advised cust has to increase weekly pmt to 150,000 to ensure shipping privileges."

c. On January 30, 2004, a Sales executive informed his co-worker that he should not be responsible for increasing business from the Prescription Resources account, a fulfillment pharmacy for the Chhabra-Smoley Organization, because "State/Fed law closed this facility down about two months ago. It continues to pop up at various places in the country, one step ahead of state regulators, I believe."

d. In June 2004, FEDEX's Senior Manager of Revenue Operations learned that Chhabra had been indicted for his involvement with Internet drug sales. He further learned that three doctors and two pharmacists involved in the Chhabra-Smoley Organization had pleaded guilty to drug trafficking based on "illegally selling excessive quantities of controlled substances – diet pills – through websites by simply having customers fill out online questionnaires without anyone checking the accuracy of the questionnaires."

e. On March 17, 2006, FEDEX's Managing Director of Sales for the Gulf States Region approved a goal adjustment for the Sales executive responsible for one of Smoley's accounts based on the reason "FDA forced closure of primary supplier for Internet pharmacy. Unable to supply customers with product."

37. In each instance, with the knowledge that these and other members of the Chhabra-Smoley Organization had been subject to law enforcement action for illegally shipping controlled substances, FEDEX continued to deliver controlled substances for the Chhabra-Smoley Organization.

38. FEDEX employees knew that the purpose of the Chhabra-Smoley Organization was to provide controlled substances to consumers without the need for a face-to-face meeting with, or physical examination, laboratory tests, or diagnosis, by a physician. FEDEX employees knew that this practice

SUPERSEDING INDICTMENT                     12
CR 14-380 CRB

1 violated the CSA, FDCA, and numerous state laws. FEDEX employees knew that the practice of
2 prescribing medication based solely on a physician's review of an online questionnaire, without a
3 physical examination, laboratory tests, or face-to-face meeting was not in accordance with the usual
4 course of medical and pharmacy practice according to the positions of the AMA, FSMB, NABP, and
5 numerous state laws. FEDEX employees further knew that the Chhabra-Smoley Organization
6 distributed controlled substances to customers who had no legitimate medical need for them.

7       39.     FEDEX departed from its usual business practices to participate in and facilitate the
8 Chhabra-Smoley Organization's unlawful sale of controlled substances. According to FEDEX's Service
9 Guide and Tariff, as well as the understanding of its employees, FEDEX did not ship contraband,
10 including illegal drugs, in the usual course of business. FEDEX also deviated from its usual course of
11 business by applying its Online Pharmacy Credit Policy to the Chhabra-Smoley Organization. FEDEX
12 further deviated from its usual course of business by placing assigning accounts associated with the
13 Chhabra-Smoley Organization to the catchall classification for purposes of determining compensation
14 for its sales executives, pursuant to FEDEX's Online Pharmacy Catchall Policy.

15      40.     FEDEX knew that controlled substances were distributed to consumers by the Chhabra-
16 Smoley Organization without regard to the age of the buyers and were a likely means by which
17 underage persons obtained controlled substances absent the supervision of an attending physician.
18 Although FEDEX had an "adult-signature" service that it mandated be used by all alcohol shippers,
19 FEDEX did not require that this service be used by the Chhabra-Smoley Organization. Even when the
20 Chhabra-Smoley Organization voluntarily used this service, FEDEX allowed packages to be re-routed at
21 the direction of the customer or left at a third-party vendor. FEDEX's employees knew that underage
22 customers could use these services to avoid the adult-signature requirement.

23      All in violation of Title 21, United States Code, Section 846.

24 ///

25 ///

26 ///

27 ///

28 ///

SUPERSEDING INDICTMENT                    13
CR 14-380 CRB

1    **COUNTS TWO THROUGH TEN**: (21 U.S.C. § 841 – Distribution of Controlled Substances)

2    41.    Paragraphs 1 through 21 and 24 through 40 are realleged and reincorporated herein by
3    reference.

4    42.    On or about the dates listed below, in the Northern District of California and elsewhere,
5    the defendants,

6
FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
7    (A/K/A FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,
8

9    did possess with intent to distribute and distribute outside the usual course of professional practice and
10   not for a legitimate medical purpose one or more controlled substances, knowing and intending that the
11   distribution and possession with intent to distribute was outside the usual course of professional practice
12   and not for a legitimate medical purpose, which offense involved substances containing those listed
13   below:

| COUNT | DATE | TRACKING NUMBER | CONTROLLED SUBSTANCE |
|-------|------|-----------------|----------------------|
| 2 | 7/19/2007 | 799181999045 | Diethylpropion |
| 3 | 7/24/2007 | 799681810394 | Phentermine |
| 4 | 7/24/2007 | 792529082334 | Phentermine |
| 5 | 7/25/2007 | 798227118185 | Phentermine |
| 6 | 7/25/2007 | 790791710858 | Phentermine |
| 7 | 7/26/2007 | 798726973512 | Adipex |
| 8 | 7/26/2007 | 790792659716 | Phentermine |
| 9 | 7/27/2007 | 790792659841 | Diazepam |
| 10 | 7/27/2007 | 790301123749 | Phentermine |

25   Each in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D) and/or (b)(2).

27   ///

28   ///

SUPERSEDING INDICTMENT          14
CR 14-380 CRB

1 **COUNT ELEVEN**: (18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs in Interstate Commerce)

2

3    43.    Paragraphs 1 through 21 and 24 through 40 are realleged and reincorporated herein by

4   reference.

5    44.    Beginning at a time unknown to the grand jury, but no later than January of 2000, and

6   ending on or about February 20, 2008, in the Northern District of California and elsewhere, the

7   defendants,

8
FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
9
(A/K/A FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,

10

11   together with Vincent Chhabra, Sabina Faruqui, Robert Smoley, RxNetwork, United Mail Pharmacy

12   Services, Icom Group, and others known and unknown to the grand jury, conspired to distribute and

13   dispense prescription drugs to consumers in various locations throughout the United States, including

14   the Northern District of California, without valid prescriptions from licensed practitioners, which caused

15   the drugs to be misbranded while held for sale after their shipment in interstate commerce, and did so

16   with the intent to defraud and mislead as to a material matter, in violation of Title 21, United States

17   Code, Sections 331(k), 333(a)(1), (a)(2), and 353(b), all of which conduct was in violation of Title 18,

18   United States Code, Section 371.

19                          Manner and Means of the Conspiracy

20   It was part of the conspiracy that:

21    45.    Paragraphs 1 through 21 and 24 through 40 are realleged and reincorporated herein by

22   reference.

23    46.    It is further alleged that each and every aspect of the conduct alleged in paragraphs 24

24   through 40 as the manner and means of the conspiracy involving controlled prescription drugs also

25   involved non-controlled prescription drugs.

26    47.    The prescription drugs were distributed with the intent to defraud and mislead in that:

27          a.    The Chhabra-Smoley Organization and its related online and fulfillment

28               pharmacies falsely and fraudulently represented to consumers and government

SUPERSEDING INDICTMENT                    15
CR 14-380 CRB

1   agencies that physicians had written valid prescriptions for the drugs they were

2   distributing.

3       b.    The Chhabra-Smoley Organization falsely and fraudulently represented to

4   consumers and government agencies that no prescription was required to obtain

5   the controlled and non-controlled prescription drugs advertised on its websites

6   and that the "prescription" issued by a doctor employed by the online pharmacy

7   based solely on his or her review of the responses to an online questionnaire was

8   valid and in accordance with federal and state law.

9       c.    The Chhabra-Smoley Organization and its associated fulfillment pharmacies and

10   pharmacists falsely and fraudulently represented to consumers and government

11   agencies that the prescription drugs were dispensed pursuant to valid prescriptions

12   after review by a pharmacist in accordance with federal and state law.

13       d.    The Chhabra-Smoley Organization falsely and fraudulently represented to

14   customers who sought to obtain prescription drugs, but who lacked prescriptions

15   from their personal physicians, and to government agencies, that the websites

16   were a legitimate, lawful, safe, and responsible source for these drugs.

17   Overt Acts

18   48.   On or about April 26, 2000, FEDEX delivered 30 pills of Meridia, a controlled

19   prescription drug, from ChoiceRx, 14300 Justice Road, Ste. B, Midlothian, Virginia, that had been

20   ordered by FDA agents in Maryland on or about April 7, 2000, from privacyrx.com by completing an

21   online questionnaire.

22   49.   On or about February 7, 2001, FEDEX delivered 30 pills of Phentermine, a controlled

23   prescription drug, from Rx Network of Florida, 5400 S University Dr., Ste. 104, Davie, Florida, that had

24   been ordered by the Federation of State Medical Boards (FSMB) on or about February 6, 2001, from

25   eprescribe.com by completing an online questionnaire.

26   50.   On or about December 3, 2001, FEDEX delivered 10 pills of Viagra, a prescription drug,

27   from United Mail Pharmacy Services, 800 E Hallandale, Hallandale, Florida, that had been ordered by

28

1 the FSMB on or about November 30, 2001, from viagraovernight.com by completing an online
2 questionnaire.

3      51.      On or about June 28, 2002, FEDEX delivered 30 pills of Phentermine, a controlled
4 prescription drug, from Rx Network, 5400 S University Dr., Ste. 107, Davie, Florida, that had been
5 ordered by agents with the Arkansas Attorney General on or about June 27, 2002, from
6 USAPrescription.com by completing an online questionnaire.

7      52.      On or about February 13, 2003, FEDEX delivered 90 pills of Bontril, a controlled
8 prescription drug, from Rx Network of Florida, 5400 S University Dr., Ste. 107, Davie, Florida, that had
9 been ordered by DEA agents in Miami, Florida, on or about February 13, 2003, from eprescribe.com by
10 completing an online questionnaire. The instructions on the website stated that an adult signature would
11 be required for delivery; however, the drugs were shipped to a Mailboxes Etc. and signed for by an
12 employee at the store.

13      53.      On or about November 12, 2003, a FEDEX employee received an e-mail in which she
14 was "advised Rx Network license was suspended for selling illegal prescriptions thru the internet – I
15 forward email to [the Sales] A/E – advised cust has to increase weekly pmt to 150,000 to ensure
16 shipping privileges."

17      54.      On or about November 25, 2003, FEDEX delivered 30 pills of Ambien, a controlled
18 prescription drug, from C&V Pharmacy, 1803 SW 8th Street, Miami, Florida, that had been ordered by
19 FDA agents in Miami, Florida, on or about November 21, 2003, from medpharmacy.com by filling out
20 an online questionnaire.

21      55.      On or about March 4, 2004, FEDEX delivered 10 pills of Cialis, a prescription drug, from
22 United Mail, 800 E Hallandale Bch Blvd #18, Hallandale, Florida, that had been ordered by the FSMB
23 on or about March 3, 2004, from completerxonline.com by filling out an online questionnaire.

24      56.      On or about March 31, 2004, FEDEX Credit analysts sent a list of FEDEX's online
25 pharmacy accounts to the Managing Director and Senior Manager of Revenue Operations that included
26 over 20 accounts associated with the Chhabra-Smoley Organization.

27
28

1    57.   In or about September of 2004, FEDEX's Credit analysts worked with FEDEX's Sales
2  employees to obtain financial security for accounts used by the Chhabra-Smoley Organization pursuant
3  to FEDEX's Online Pharmacy Credit Policy.

4    58.   In or about April of 2007, accounts associated with the Chhabra-Smoley Organization
5  were assigned to the catchall classification by FEDEX's Field Sales employees, pursuant to the Online
6  Pharmacy Catchall Policy that had been approved by FEDEX's Field Sales Vice Presidents.

7    59.   On or about July 26, 2007, FEDEX delivered 30 pills of Phentermine, a controlled
8  prescription drug, from United Mail Pharmacy, 800 Hallandale Beach Blvd., Hallandale Beach, Florida,
9  that had been ordered by a customer located in Napa, California, on or about July 25, 2007, from
10  fastplanetrx.com by completing an online questionnaire.

11    60.   In or about October of 2007, FEDEX's Sales analysts reviewed the placement of
12  accounts associated with the Chhabra-Smoley Organization in catchall and obtained the approval of the
13  Senior Vice President of Field Sales to maintain these "high value" accounts in the catchall
14  classification pursuant to the Online Pharmacy Catchall Policy.

15    61.   In or about January of 2008, a FEDEX contractor sent to a FEDEX Security manager a
16  list of packages containing "Red Flag Pharmaceuticals" that had been identified for destruction.  The list
17  included a package containing Phentermine, a controlled prescription drug, that had been shipped by
18  FEDEX for United Mail LLC, a fulfillment pharmacy used by the Chhabra-Smoley Organization.

19    All in violation of Title 18, United States Code, Section 371.

20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

SUPERSEDING INDICTMENT                    18
CR 14-380 CRB

1 **COUNT TWELVE**: (18 U.S.C. § 1956 – Conspiracy to Launder Money)

2      62.    Paragraphs 1 through 21, 24 through 40, and 46 through 61 are realleged and

3 reincorporated herein by reference.

4      63.    Beginning at a time unknown to the grand jury, but no later than January of 2000, and

5 ending on or about February 20, 2008, in the Northern District of California and elsewhere, the

6 defendants,

7
8
9

FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
(A/K/A FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,

10 together with Vincent Chhabra, Sabina Faruqui, Robert Smoley, RxNetwork, United Mail Pharmacy

11 Services, Icom Group, and others known and unknown to the grand jury, did knowingly and

12 intentionally conspire to conduct a financial transaction involving the proceeds of a specified unlawful

13 activity, knowing that the property involved in the financial transaction represented proceeds of some

14 form of unlawful activity, and intending to promote the carrying on of the specified unlawful activity, to

15 wit: the possession with intent to distribute and distribution of controlled substances outside the usual

16 course of professional practice and not for a legitimate medical purpose, knowing and intending that the

17 possession with intent to distribute and distribution was outside the usual course of professional practice

18 and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a),

19 841(b)(1)(D), (b)(2), and 846, all of which conduct was in violation of Title 18, United States Code,

20 Sections 1956(a)(1)(A)(i) and (h).

21 Manner and Means of the Conspiracy

22 It was part of the conspiracy that:

23      64.    Paragraphs 1 through 21, 24 through 40, and 46 through 61 are realleged and

24 reincorporated herein by reference.

25      65.    For each package containing controlled substances that FEDEX knowingly and

26 intentionally distributed outside the usual course of professional practice and not for a legitimate

27 medical purpose for the Chhabra-Smoley Organization, FEDEX requested payment for providing

28 shipping services.

66.     Chhabra, Smoley, and their co-conspirators made payments in the form of wire transfers, checks, direct debit, credit card charges, and payments by telephone to FEDEX for FEDEX's shipment of controlled substances obtained outside the usual course of professional practice and not for a legitimate medical purpose for the Chhabra-Smoley Organization.

67.     The payments made to FEDEX by Chhabra, Smoley, and their co-conspirators represented proceeds of the illegal sale of controlled substances by the Chhabra-Smoley Organization.

68.     FEDEX employees knew that the payments from members of the Chhabra-Smoley Organization represented the proceeds of the sale of controlled substances and prescription drugs based on invalid prescriptions that were issued outside the usual course of professional practice and not for a legitimate medical purpose.

69.     The payments made by the Chhabra-Smoley Organization to FEDEX for the shipment of controlled substances knowingly and intentionally outside the usual course of professional practice and not for a legitimate medical purpose, which payments were made with the proceeds of the unlawful sale of controlled substances, included, but were not limited to:

| Date | Payer | Amount |
|------|-------|--------|
| 4/24/2000 | 2U-Netmail LLC | $ 56,951 |
| 12/15/2000 | VKC Consulting, LLC | $ 75,000 |
| 1/8/2002 | USA Prescription, Inc. | $ 245,944 |
| 12/21/2004 | Robert Smoley (American Express) | $ 3,779 |
| 6/7/2005 | Robert Smoley (American Express) | $ 7,734 |
| 9/12/2005 | Robert Smoley (American Express) | $ 4,295 |
| 12/13/2006 | Robert Smoley (American Express) | $ 4,573 |
| 7/26/2007 | Robert Smoley (American Express) | $ 10,558 |
| 11/1/2007 | Robert Smoley (American Express) | $ 3,649 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (h).

///

///

1 **COUNT THIRTEEN**: (21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances)

2     70.     Paragraphs 1 through 21 are realleged and reincorporated herein by reference.

3     71.     Beginning at a time unknown to the grand jury, but no later than September of 2002, and

4 ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

5
6
7

FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
(A/K/A FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,

8 together with Creative Pharmacy Services (doing business as Superior Drugs), Wayne White, Anthony

9 Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall Kanner, David Glass,

10 Michael Bezonsky, Claude Covino, Genetechnica, Physicians Online Network, The Spence Group,

11 Pharmacom, Carmel Management, SaveOn Rx, SafescriptsOnline, Affpower, and others known and

12 unknown to the grand jury, conspired to distribute, and to possess with intent to distribute outside the

13 usual course of professional practice and not for a legitimate medical purpose one or more controlled

14 substances, knowing and intending that the distribution and possession with intent to distribute was

15 outside the usual course of professional practice and not for a legitimate medical purpose, which offense

16 involved substances containing (a) Phendimetrazine, a Schedule III controlled substance;

17 (b) Phentermine, a Schedule IV controlled substance; (c) Butalbital, a Schedule III controlled substance,

18 and (d) Ambien, a Schedule IV controlled substance, in violation of Title 21, United States Code,

19 Sections 841(a)(1), (b)(1)(D), and (b)(2) (before April 13, 2009), and in violation of Title 21, United

20 States Code, Sections 841(a)(1), (b)(1)(E)(i), (b)(2), (h)(1), and (h)(4) (after April 13, 2009), all of

21 which conduct was in violation of Title 21, United States Code, Section 846.

22 Manner and Means of the Conspiracy

23 It was part of the conspiracy that:

24 A.     Operation of Superior Drugs

25     72.     Unindicted co-conspirator Wayne White ("White") was the chief pharmacist at Creative

26 Pharmacy Services, doing business as Superior Drugs ("Superior"). White operated Superior as a

27 fulfillment pharmacy that illegally distributed controlled substances without valid prescriptions directly

28 to consumers who had ordered them from Internet pharmacies owned and operated by unindicted co-

1 conspirators Anthony Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall

2 Kanner, David Glass, Michael Bezonsky, and others known and unknown to the grand jury.

3     73.     The Internet pharmacies for which Superior filled orders for controlled substances,

4 including discreetonlinemeds.com, pricebustersrx.com, safescriptsonline.com, safetrustprocessing.com,

5 rx-max.com, integrarx.com, medscriptsmd.com, dietpillscheap.com, and buymeds.com, offered for sale

6 controlled substances in Schedules III and IV, by means of the Internet, to customers who were only

7 required to complete an online questionnaire and were not examined or diagnosed by the physicians who

8 issued the prescriptions in connection with their orders.

9     74.     The Internet pharmacies for which Superior filled orders for controlled substances based

10 on invalid prescriptions partnered with, recruited, and hired throughout the United States and Puerto

11 Rico physicians to review the customers' online questionnaires and to issue invalid prescriptions for

12 controlled substances based solely upon the customers' responses.

13     75.     To meet the high demand for illegally obtained controlled substances, the Internet

14 pharmacies for which Superior filled orders for controlled substances based on invalid prescriptions

15 partnered with, recruited, and hired other fulfillment pharmacies throughout the United States, including

16 Gem Pharmacy, Universal Pharmacy, Union Pharmacy, Waterview Pharmacy, United Care Pharmacy,

17 Kwic Fill, and SaveOn Rx, among others, to fill invalid prescriptions for controlled substances and to

18 ship them to customers in the Northern District of California and elsewhere in the United States.

19     76.     The Internet pharmacies for which Superior filled orders for controlled substances based

20 on invalid prescriptions hired employees to call, respond to calls, and send e-mails to existing and

21 prospective customers in the Northern District of California and elsewhere in the United States to solicit

22 them to order controlled substances or to refill invalid prescriptions for controlled substances.

23 B.     FEDEX's Shipment of Illegal Drugs for Superior

24     77.     FEDEX employees, including those (a) who negotiated and entered into the written

25 agreements with Superior and its related Internet and fulfillment pharmacies on behalf of FEDEX,

26 (b) who managed these accounts for FEDEX, and (c) who maintained the business relationship between

27 FEDEX and Superior and its related Internet and fulfillment pharmacies, including credit and payment

28 terms, knew that Superior and its related Internet and fulfillment pharmacies were distributing controlled

SUPERSEDING INDICTMENT     22
CR 14-380 CRB

1 substances based on prescriptions issued by doctors after only reviewing customers' responses to online
2 questionnaires.

3     78.    Unindicted co-conspirators Wayne White, Anthony Spence, Christopher Napoli, Sanford
4 Cohen, Orlando Birbragher, Marshall Kanner, David Glass, Michael Bezonsky, Claude Covino, and
5 others known and unknown to the grand jury and their employees and associates entered into
6 agreements with FEDEX in which FEDEX agreed to ship packages for Superior and the Internet
7 pharmacies for which Superior filled orders for controlled substances based on invalid prescriptions. As
8 part of these agreements, FEDEX opened over 50 accounts for Superior and the Internet pharmacies for
9 which Superior filled orders for controlled substances based on invalid prescriptions. Superior and its
10 related Internet and fulfillment pharmacies used these FEDEX accounts to illegally distribute controlled
11 substances into the Northern District of California and elsewhere in the United States.

12     79.    FEDEX's employees communicated on a regular basis with Wayne White, Anthony
13 Spence, Sanford Cohen, Orlando Birbragher, Marshall Kanner, Claude Covino, David Glass, Michael
14 Bezonsky, and other employees of Superior and its related Internet and fulfillment pharmacies in
15 writing, by telephone, and in person regarding, among other things, business trends, volume, and
16 shipping and logistics needs.

17     80.    FEDEX employees visited the premises of Superior. These employees observed
18 Superior's operations, including the filling of orders for controlled substances.

19     81.    FEDEX employees observed packages from Superior containing pill bottles filled with
20 controlled substances; FEDEX employees assisted with preparing these packages for shipment and
21 subsequently distributed these packages for Superior and its related Internet and fulfillment pharmacies
22 in the Northern District of California and throughout the United States.

23     82.    FEDEX employees and their contractors communicated with employees of Superior and
24 its related Internet and fulfillment pharmacies on a regular basis regarding lost, stolen, or delayed
25 FEDEX shipments of controlled substances.

26     83.    FEDEX employees knew that the purpose of Superior was to provide controlled
27 substances to consumers without the need for a face-to-face meeting with, or physical examination or
28 laboratory tests by, a physician. FEDEX employees knew that this practice violated the CSA, FDCA,

1  and numerous state laws. FEDEX employees further knew that the practice of prescribing medication

2  based solely on a physician's review of an online questionnaire, without a physical examination,

3  laboratory tests, diagnosis, or face-to-face meeting was not in accordance with the usual course of

4  medical and pharmacy practice according to the positions of the AMA, FSMB, NABP, and numerous

5  state laws. FEDEX employees further knew that Superior distributed controlled substances to customers

6  who had no legitimate medical need for them.

7       84.    FEDEX departed from its usual business practices to participate in and facilitate

8  Superior's unlawful sale of controlled substances. According to FEDEX's Service Guide and Tariff, as

9  well as the understanding of its employees, FEDEX did not ship contraband, including illegal drugs, in

10  the usual course of business. FEDEX also deviated from its usual course of business by applying its

11  Online Pharmacy Credit Policy to Superior and its related online and fulfillment pharmacies. FEDEX

12  further deviated from its usual course of business by assigning shipping accounts associated with

13  Superior to the catchall classification for purposes of determining compensation for its sales executives

14  pursuant to FEDEX's Online Pharmacy Catchall Policy.

15      85.    FEDEX employees knew that Superior and online and fulfillment pharmacies affiliated

16  with Superior were closed down by state and federal law enforcement agencies, including the FDA and

17  DEA, and that their owners, operators, pharmacists, and doctors were indicted, arrested, and convicted

18  of violating the CSA, including:

19           a.    In June of 2004, a FEDEX Sales manager sent an e-mail regarding Superior

20                 stating, "they were shut down for a few days by the DEA and the company they

21                 were fulfilling for moved the business to [another fulfillment pharmacy]." The

22                 fulfillment pharmacy to which the business was moved when Superior was shut

23                 down was also a FEDEX customer.

24           b.    In March of 2005, the account executive for Superior submitted a request for an

25                 adjustment to his sales goals because Superior represented a "significant revenue

26                 loss" when "FDA raided their property. No longer ship same volume."

27           c.    In June of 2004, FEDEX's Senior Manager of Credit learned that the online

28                 pharmacy American Medical Services, which had been using Superior to ship its

1  drugs, had been closed down by the FDA and DEA, but was now operating as

2  Dynamic Health Solutions.

3  d.  In June of 2006, a district sales manager and credit analyst learned that SaveOn

4  Rx owner Claude Covino had stopped shipping drugs from SaveOn Rx because

5  he was under investigation by the DEA. The manager and analyst determined that

6  Covino was using other fulfillment pharmacies, including Superior Drugs, to

7  continue to ship controlled substances for Internet pharmacies while avoiding

8  detection by the DEA.

9  86.  After April 13, 2009, FEDEX continued to distribute controlled substances for Superior

10  Drugs that had been obtained by means of the Internet, despite the fact that neither Superior Drugs, nor

11  any of the websites that referred orders to Superior Drugs, had obtained a modified DEA registration,

12  despite the fact that the websites did not display any of the statements required by 21 U.S.C. § 831, and

13  despite the fact that prescriptions were issued by doctors employed by the online pharmacies after either

14  review of an online questionnaire or after reviewing a report of a physical examination conducted by a

15  physician who was not unavailable at the time the prescription was issued and who had not requested

16  that the doctor employed by the online pharmacy serve as a covering physician.

17  87.  FEDEX knew that controlled substances were distributed to consumers by Superior and

18  its related Internet and fulfillment pharmacies without regard to the age of the buyers and were a likely

19  means by which underage persons obtained controlled substances absent the supervision and care of an

20  attending physician. Although FEDEX had an "adult-signature required" service that it mandated be

21  used by all alcohol shippers, at no point did FEDEX require that this service be used by Superior and its

22  related Internet and fulfillment pharmacies. Even when Superior voluntarily used this service, FEDEX

23  allowed packages sent from Superior to be re-routed at the direction of the customer or left at a third-

24  party vendor. FEDEX's employees knew that underage customers could use these services to avoid the

25  adult-signature requirement.

26  All in violation of Title 21, United States Code, Section 846.

27  ///

28  ///

1  **COUNTS FOURTEEN AND FIFTEEN**:  (21 U.S.C. § 841 – Distribution of Controlled Substances)

2       88.     Paragraphs 1 through 21 and 72 through 87 are realleged and reincorporated herein by

3  reference.

4       89.     On or about the dates listed below, in the Northern District of California and elsewhere,

5  the defendants,

6                          FEDEX CORPORATION,
                     FEDERAL EXPRESS CORPORATION,
7                        (A/K/A FEDEX EXPRESS), and
                     FEDEX CORPORATE SERVICES, INC.,

8

9  did possess with intent to distribute and distribute outside the usual course of professional practice and

10 not for a legitimate medical purpose controlled substances knowing and intending that the distribution

11 and possession with intent to distribute was outside the usual course of professional practice and not for

12 a legitimate medical purpose, which offense involved substances containing those listed below:

13

| COUNT | DATE | TRACKING NUMBER | CONTROLLED SUBSTANCE |
|-------|------|-----------------|----------------------|
| 14 | 2/7/2008 | 960103326342 | Phentermine |
| 15 | 8/15/2008 | 790069431423 | Phentermine |

16

17       Each in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(2).

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

SUPERSEDING INDICTMENT                    26
CR 14-380 CRB

1  **COUNT SIXTEEN**: (18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs in Interstate
2  Commerce)

3      90.    Paragraphs 1 through 21 and 72 through 87 are realleged and reincorporated herein by
4  reference.

5      91.    Beginning at a time unknown to the grand jury, but no later than September of 2002, and
6  ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

7  FEDEX CORPORATION,<br>FEDERAL EXPRESS CORPORATION,<br>(A/K/A FEDEX EXPRESS), and<br>FEDEX CORPORATE SERVICES, INC.,

10  together with Creative Pharmacy Services (doing business as Superior Drugs), Wayne White, Anthony
11  Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall Kanner, David Glass,
12  Michael Bezonsky, Claude Covino, Genetechnica, Physicians Online Network, The Spence Group,
13  Pharmacom, Carmel Management, SaveOn Rx, SafescriptsOnline, Affpower, and others known and
14  unknown to the grand jury, conspired to dispense and distribute prescription drugs, including the
15  prescription drugs identified in paragraphs 10 and 18, to consumers in various locations throughout the
16  United States, including the Northern District of California, without valid prescriptions from licensed
17  practitioners, which caused the drugs to be misbranded while held for sale after their shipment in
18  interstate commerce, and did so with the intent to defraud and mislead as to a material matter, in
19  violation of Title 21, United States Code, Sections 331(k), 333(a)(1), (a)(2), and 353(b), all of which
20  conduct was in violation of Title 18, United States Code, Section 371.

21  Manner and Means of the Conspiracy

22  It was part of the conspiracy that:

23      92.    Paragraphs 1 through 21 and 72 through 87 are realleged and reincorporated herein by
24  reference.

25      93.    Each and every aspect of the conduct alleged in paragraphs 72 through 87 as the manner
26  and means of the conspiracy involving controlled prescription drugs also involved non-controlled
27  prescription drugs.

28  ///

SUPERSEDING INDICTMENT      27
CR 14-380 CRB

94. The prescription drugs were distributed with the intent to defraud and mislead in that:

    a. Superior and its related online and fulfillment pharmacies falsely and fraudulently represented to consumers and government agencies that physicians had written valid prescriptions for the drugs they were distributing.

    b. The online pharmacies falsely and fraudulently represented to consumers and government agencies that no prescription was required to obtain the controlled and non-controlled prescription drugs advertised on their websites and that the "prescription" issued by a doctor employed by the online pharmacy based solely on his or her review of the responses to an online questionnaire was valid and in accordance with federal and state law.

    c. Superior and its associated fulfillment pharmacies and pharmacists falsely and fraudulently represented to consumers and government agencies that the prescription drugs were dispensed pursuant to valid prescriptions after review by a pharmacist in accordance with federal and state law.

    d. The Internet pharmacies falsely and fraudulently represented to customers who sought to obtain prescription drugs, but who lacked prescriptions from their personal physicians, and to government agencies, that the websites were a legitimate, lawful, safe, and responsible source for these drugs.

### Overt Acts

95. On or about August 5, 2002, FEDEX delivered 30 pills of Phentermine, a controlled prescription drug, from Superior that had been ordered by FDA agents in Miami, Florida, on or about June 18, 2002, from medscriptsmd.com by completing an online questionnaire.

96. On or about April 8, 2003, FEDEX delivered 30 pills of Bontril, a controlled prescription drug, from Superior that had been ordered by DEA agents in Seattle, Washington, on or about April 4, 2003, from integrarx.com by completing an online questionnaire.

97. On or about May 10, 2004, employees in FEDEX's Credit Department prepared a list of FEDEX's online pharmacy customers for FEDEX EXPRESS's Chief Financial Officer. Accounts used by Superior were included on this list.

98.     In or about September of 2004, employees in FEDEX's Credit Department worked with employees in FEDEX's Sales Department to obtain financial security for accounts used by Superior pursuant to FEDEX's Online Pharmacy Credit Policy.

99.     On or about September 26, 2005, FEDEX delivered 10 pills of Cialis, a prescription drug, from Superior that had been ordered by the Federation of State Medical Boards (FSMB) on or about September 21, 2005, from order-viagra-online.net by completing an online questionnaire.

100.     On or about February 27, 2006, FEDEX delivered 60 pills of Phentermine, a controlled prescription drug, from Kwic Fill, Inc. to fill an order placed by DEA agents in San Jose, California, on or about February 24, 2006, for 30 pills of Phentermine from safescriptsonline.com by completing an online questionnaire. FEDEX billed the shipping charges to the account for Superior Drugs.

101.     On or about October 26, 2006, FEDEX delivered a package from Superior containing Soma, a prescription pain killer, that an undercover officer had ordered by calling a number left on a deceased woman's telephone by an online pharmacy that was seeking to have the woman refill her order.

102.     On or about December 20, 2006, an agent with the DEA informed FEDEX's Senior Vice President of Security that FEDEX had delivered drugs in response to the undercover order placed by the officer discussed in paragraph 101.

103.     In or about May of 2007, accounts used by Superior were assigned to the catchall classification pursuant to FEDEX's Online Pharmacy Sales Catchall Policy.

104.     On or about May 30, 2008, FEDEX shipped Phentermine, a controlled prescription drug, from Superior to San Mateo, California, in response to an order placed by a customer on or about May 27, 2008 from the RxSource Network by completing an online questionnaire.

105.     On or about August 7, 2009, FEDEX delivered 30 pills of Phentermine, a controlled prescription drug, from Superior that had been ordered by DEA agents in Philadelphia, Pennsylvania, on or about June 1, 2009, from discreetonlinemeds.com by completing an online questionnaire and submitting a fictitious report of physical examination that had been created by the agents without the input of a doctor.

///

106.    On or about November 2, 2009, FEDEX delivered 90 pills of Butalbital, a controlled prescription drug, from Superior that had been ordered by FDA agents in Philadelphia, Pennsylvania, on or about October 26, 2009, from discreetonlinemeds.com by completing an online questionnaire.

All in violation of Title 18, United States Code, Section 371.

**COUNT SEVENTEEN**:  (18 U.S.C. §  1956 – Conspiracy to Launder Money)

107.    Paragraphs 1 through 21, 72 through 87, and 93 through 106 are realleged and reincorporated herein by reference.

108.    Beginning at a time unknown to the grand jury, but no later than September of 2002, and ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
(A/K/A FEDEX EXPRESS), and
FEDEX CORPORATE SERVICES, INC.,

together with Creative Pharmacy Services (doing business as Superior Drugs), Wayne White, Anthony Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall Kanner, David Glass, Michael Bezonsky, Claude Covino, Genetechnica, Physicians Online Network, The Spence Group, Pharmacom, Carmel Management, SaveOn Rx, SafescriptsOnline, Affpower, and others known and unknown to the grand jury, did knowingly and intentionally conspire to conduct a financial transaction involving the proceeds of a specified unlawful activity, knowing that the property involved in the financial transaction represented proceeds of some form of unlawful activity, and intending to promote the carrying on of the specified unlawful activity, to wit: the possession with intent to distribute and distribution of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, knowing and intending that the possession with intent to distribute and distribution was outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D), (b)(2), and 846 (for conduct prior to April 13, 2009), and in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), (b)(2), (h)(1), (h)(4), and 846 (for conduct after April 13, 2009), all of which conduct was in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (h).

1

Manner and Means of the Conspiracy

2 It was part of the conspiracy that:

3     109.   It is alleged that for each package containing controlled substances that FEDEX

4 knowingly and intentionally distributed outside the usual course of professional practice and not for a

5 legitimate medical purpose for Superior, FEDEX requested payment for providing shipping services.

6     110.   Wayne White, Anthony Spence, Claude Covino, Sanford Cohen, Orlando Birbragher,

7 Marshall Kanner, Claude Covino David Glass, Michael Bezonsky, and their co-conspirators made

8 payments in the form of wire transfers, checks, direct debit, credit card charges, and payments by

9 telephone to FEDEX for FEDEX's shipment of controlled substances obtained outside the usual course

10 of professional practice and not for a legitimate medical purpose for Superior.

11     111.   The payments to FEDEX by Wayne White, Anthony Spence, Claude Covino, Sanford

12 Cohen, Orlando Birbragher, David Glass, Michael Bezonsky, and their co-conspirators represented

13 proceeds of the illegal sale of controlled substances outside the usual course of professional practice and

14 not for a legitimate medical purpose by Superior and its related online and fulfillment pharmacies.

15     112.   FEDEX employees knew that the payments from Superior and its related Internet and

16 fulfillment pharmacies represented the proceeds of the sale of controlled substances and prescription

17 drugs based on invalid prescriptions that were issued outside the usual course of professional practice

18 and not for a legitimate medical purpose.

19     113.   Some of the payments made by Superior and its related online and fulfillment pharmacies

20 to FEDEX for the shipment of controlled substances knowingly and intentionally outside the usual

21 course of professional practice and not for a legitimate medical purpose, which payments were made

22 with the proceeds of the unlawful sale of controlled substances, included, but were not limited to:

23

| Date | Payer | Amount |
|------|-------|--------|
| 12/19/2002 | Creative Pharmacy Services, Inc. | $ 56,555.12 |
| 5/23/2003 | Creative Pharmacy Services, Inc. | $ 29,367.18 |
| 9/3/2004 | Creative Pharmacy Services, Inc. | $ 23,859.10 |
| 12/20/2005 | Creative Pharmacy Services, Inc. | $ 48,786.20 |

28

| Date | Payer | Amount |
|------|-------|--------|
| 10/17/2006 | Creative Pharmacy Services, Inc. | $ 25,118.98 |
| 9/18/2007 | Creative Pharmacy Services, Inc. | $ 13,067.47 |
| 1/22/2008 | Creative Pharmacy Services, Inc. | $ 19,163.53 |
| 2/3/2009 | Creative Pharmacy Services, Inc. | $ 8,582.24 |
| 3/9/2010 | Creative Pharmacy Services, Inc. | $ 532.41 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (h).

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1   **COUNT EIGHTEEN**: (18 U.S.C. § 1956 – Conspiracy to Launder Money)

2       114.   Paragraphs 1 through 21, 72 through 87, and 93 through 106 are realleged and

3   reincorporated herein by reference.

4       115.   Beginning at a time unknown to the grand jury, but no later than November of 2003, and

5   ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

6

7

8

FEDEX CORPORATION,<br>
FEDERAL EXPRESS CORPORATION,<br>
(A/K/A FEDEX EXPRESS), and<br>
FEDEX CORPORATE SERVICES, INC.,

9   together with Creative Pharmacy Services doing business as Superior Drugs, Wayne White, Anthony

10   Spence, Genetechnica, Physicians Online Network, The Spence Group, and others known and unknown

11   to the grand jury, did knowingly and intentionally conspire to conduct a financial transaction involving

12   the proceeds of a specified unlawful activity, knowing that the property involved in the financial

13   transaction represented proceeds of some form of unlawful activity, and intending to promote the

14   carrying on of the specified unlawful activity, to wit: the possession with intent to distribute and

15   distribution of controlled substances outside the usual course of professional practice and not for a

16   legitimate medical purpose, knowing and intending that the possession with intent to distribute and

17   distribution was outside the usual course of professional practice and not for a legitimate medical

18   purpose, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D), (b)(2), and 846 (for

19   conduct prior to April 13, 2009), and in violation of Title 21, United States Code, Sections 841(a)(1),

20   (b)(1)(E)(i), (b)(2), (h)(1), (h)(4), and 846 (for conduct after April 13, 2009), all of which conduct was in

21   violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (h).

22 Manner and Means of the Conspiracy

23   It was part of the conspiracy that:

24       116.   FEDEX delivered and attempted to deliver packages from Superior containing controlled

25   substances for which FEDEX had agreed to collect payment, in the form of checks and money orders,

26   from the recipients using FEDEX's cash-on-delivery (COD) service.

27       117.   FEDEX charged Superior a separate fee for use of its COD service.

28

1       118.     FEDEX delivered and attempted to deliver to Superior checks and money orders it had

2 collected as COD payments for deliveries of controlled substances unlawfully ordered from Internet

3 pharmacies, including The Spence Group, Physicians Online Network, Genetechnica, and others.

4       119.     FEDEX knew that the money orders and checks were intended as payment for controlled

5 substances that FEDEX had delivered and attempted to deliver from Superior to consumers. FEDEX

6 further knew that those orders had been placed by customers after filling out an online questionnaire

7 with no contact between the prescribing physician and patient and were thus distributed outside the

8 usual course of professional practice and not for a legitimate medical purpose and were not based on

9 valid prescriptions.

10       120.     Some of the packages transported to and from Superior by FEDEX as part of FEDEX's

11 agreement to collect payment pursuant to its COD service for controlled substances distributed outside

12 the usual course of professional practice and not for a legitimate medical purpose, included, but were not

13 limited to:

| Date | Amount | Recipient Location | Tracking No. |
|------|--------|--------------------|--------------|
| 2/7/2008 | $ 164.50 | Redwood City, California | 960103326342 |
| 5/27/2008 | $ 207.51 | San Mateo, California | 798448652979 |
| 8/15/2008 | $ 209.42 | Saratoga, California | 790069431423 790069431434 |
| 11/18/2008 | $ 210.50 | Philadelphia, Pennsylvania | 791185617968 791185617979 |
| 1/16/2009 | $ 199.50 | Philadelphia, Pennsylvania | 791202845992 790150248910 |
| 1/16/2009 | $ 199.50 | Philadelphia, Pennsylvania | 790150248900 791202846006 |
| 7/15/2009 | $ 157.49 | Philadelphia, Pennsylvania | 798107645420 798107645431 |
| 11/2/2009 | $ 157.49 | Philadelphia, Pennsylvania | 798119025518 798119025529 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (h).

///

SUPERSEDING INDICTMENT       34
CR 14-380 CRB

1  **FORFEITURE ALLEGATION**:

2       121.    Paragraphs 1 through 120 of this Superseding Indictment are realleged and fully

3  incorporated herein by reference for the purpose of alleging forfeiture.

4       122.    Upon a conviction of any of the offenses alleged in Counts One through Ten and Thirteen

5  through Fifteen, the defendants,

6                          FEDEX CORPORATION,
                    FEDERAL EXPRESS CORPORATION,
7                       (A/K/A FEDEX EXPRESS), and
                    FEDEX CORPORATE SERVICES, INC.,
8

9  shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a)(1) and (2),

10 any property constituting and derived from any proceeds defendants obtained, directly or indirectly, as a

11 result of said violations, and any property used, or intended to be used, in any manner or part, to commit

12 or to facilitate the commission of said violations.

13      123.    Upon a conviction of any of the offenses alleged in Counts Eleven and Sixteen, the

14 defendants,

15                         FEDEX CORPORATION,
                    FEDERAL EXPRESS CORPORATION,
16                      (A/K/A FEDEX EXPRESS), and
                    FEDEX CORPORATE SERVICES, INC.,
17

18 shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any

19 property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds

20 traceable to the commission of said offenses.

21      124.    Upon a conviction of any of the offenses alleged in Counts Twelve, Seventeen, and

22 Eighteen, the defendants,

23                         FEDEX CORPORATION,
                    FEDERAL EXPRESS CORPORATION,
24                      (A/K/A FEDEX EXPRESS), and
                    FEDEX CORPORATE SERVICES, INC.,
25

26 shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

27 property, real and personal, involved in said offenses, and any property traceable to said property used to

28 facilitate said offenses.

SUPERSEDING INDICTMENT          35
CR 14-380 CRB

1    125.    If any of said property, as a result of any act or omission of the defendants:

2            a.    cannot be located upon the exercise of due diligence;

3            b.    has been transferred to, sold to, or deposited with a third person;

4            c.    has been placed beyond the jurisdiction of the Court;

5            d.    has been substantially diminished in value; or

6            e.    has been commingled with other property which cannot be subdivided without

7                  difficulty;

8    any and all interest defendants have in other property shall be vested in the United States and forfeited to

9    the United States pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code,

10   Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

11

12   **SENTENCING ALLEGATION**

13   126.    With respect to the charges in this Superseding Indictment, for purposes of determining

14   the alternative maximum fine pursuant to Title 18, United States Code, Section 3571(d), the defendants,

15                          FEDEX CORPORATION,
                            FEDERAL EXPRESS CORPORATION,
16                          (A/K/A FEDEX EXPRESS), and
                            FEDEX CORPORATE SERVICES, INC.,
17

18   and their coconspirators derived gross gains of at least $820,000,000.

19   DATED: August 14, 2014                              A TRUE BILL.

20

21                                                       Nancy J. Return
                                                         FOREPERSON

22

23   MELINDA HAAG
     United States Attorney
24

25   J. DOUGLAS WILSON

26   Chief, Criminal Division

27

28   (Approved as to form:
                          AUSAs Ault & Waldinger
     SUPERSEDING INDICTMENT                    36
     CR 14-380 CRB