**Pages 1 - 20**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
                             )
  VS.                        )     **No. CR 14-0380 CRB**
                             )
FEDEX CORPORATION,           )
FEDERAL EXPRESS CORPORATION, )
FEDEX CORPORATE SERVICES INC.,)
                             )
         Defendants.         )
_____)   San Francisco, California
                                 Wednesday, August 19, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:         Melinda Haag
                       United States Attorney
                       450 Golden Gate Avenue
                       San Francisco, California  94102
                  **By: Kyle F. Waldinger, AUSA
                       Wai Wilson Leung, AUSA**

For Defendants:        Arguedas, Cassman & Headley, LLP
                       803 Hearst Avenue
                       Berkeley, California  94710
                  **By: Cristina C. Arguedas, Esquire
                       Ted W. Cassman, Esquire
                       Raphael M. Goldman, Esquire**

Also Present:          Peter Bloomberg
                       Fed Ex Senior Litigation Counsel


Reported By: Katherine Powell Sullivan, CSR No. 5812, RMR, CRR
             Official Reporter

```
 1  Wednesday - August 19, 2015                        2:04 a.m.
 2                        P R O C E E D I N G S
 3                              ---000---
 4       THE CLERK:  Calling case CR 14-0380, the United States
 5  of America versus FedEx Corporation, et al.
 6       Appearances, Counsel.
 7       MR. WALDINGER:  Good morning, Your Honor.  Kyle
 8  Waldinger for the United States.  I'm joined by Wilson Leung.
 9  Ms. Ault is ill today.
10       MS. ARGUEDAS:  Chris Arguedas, for FedEx, along with
11  Raphe Goldman and Ted Cassman.  And for FedEx is Peter
12  Bloomberg, who is senior litigation counsel.
13       THE COURT:  Good morning.
14       MR. CASSMAN:  Good morning.
15       MR. GOLDMAN:  Good morning.
16       MS. ARGUEDAS:  Good morning.
17       THE COURT:  So this matter is on for consideration of
18  a motion to continue the date for trial.  The trial is
19  presently set on February 29th; right?
20       MS. ARGUEDAS:  Right.
21       THE COURT:  Seven months -- six months, seven months
22  from now.
23       Okay.  And the basis for the motion, as I understand it,
24  is that there are a number of subpoenas outstanding for which
25  there has not been compliance in the sense that while there --
```

1   the requests are out or the subpoenas are out, the searches in
2   connection with the subpoenas are ongoing and don't appear to
3   provide the defense with the materials in what the defense
4   believes to be a timely fashion.
5       Have I got it right?  Maybe I should just --
6           **MS. ARGUEDAS:**  Half.
7           **THE COURT:**  Half right.  Well, that's good for
8   government work.  Maybe we would expect something better out of
9   private enterprise.  But for my work, half right is okay.
10      Go ahead.
11          **MS. ARGUEDAS:**  We have two reasons.  One is -- that's
12  why I say "half."
13      Half of the basis for our request is that the government
14  has not yet finished, by a long shot, providing us with
15  discovery.
16      We got a huge amount, 11 gigabytes, just a couple of weeks
17  ago, on July 22nd.  And they have told us that we have
18  another -- they call it a "big chunk," also multiple gigabytes,
19  that we're not going to get until, they say, September.
20      We're not -- again, we are not blaming them for this.
21  This is how it goes.  But we don't have it yet.  And it's a
22  huge amount of material.  And we have to have it, obviously,
23  before we can file motions, et cetera, have a trial.
24      The other half of the reason are the subpoenas.  They are
25  out.  And I did want to correct the record.  The government's

1  assertions in Kirstin Ault's declaration are incorrect in
2  substantially important ways.  She says that we did not serve
3  all the subpoenas --
4          **THE COURT:**  I'm not --
5          **MS. ARGUEDAS:**  Okay.
6          **THE COURT:**  I'm not dealing with any of that.
7          **MS. ARGUEDAS:**  Okay.  So the subpoenas are out.  The
8  various agencies are at different levels of being able to
9  answer us.  And mostly what they're saying is, "We're still
10 searching."
11         **THE COURT:**  Okay.
12         **MS. ARGUEDAS:**  We have not asked for Court
13 intervention because you told us to be reasonable, which we
14 would have been anyway.  But we are being.  And we think
15 they're being reasonable.
16    Many of the documents we're asking for go back to the
17 early 2000s, pre-digital everything.
18    So various of them have told us that they can't even start
19 producing until the fall.  And they don't know when they're
20 going to finish because they don't know how many hits their
21 searches are going to bring up.
22    So we have, sort of, estimated when we think they are
23 going to finish.  And the combination of that and the discovery
24 that we either just got or don't yet have means that we need a
25 continuance.

1          **THE COURT:**  Well, okay.  I, sort of, looked at it and
2    thought, I see that there are two components.  And I'll address
3    the government's production in a minute.
4        Let me address the second part first.  That is, your
5    subpoenas that have gone out in connection with private -- or,
6    I mean, they may be public entities --
7          **MS. ARGUEDAS:**  Yeah.
8          **THE COURT:**  -- but they're not the United States
9    government.
10         **MS. ARGUEDAS:**  Right.
11         **THE COURT:**  They are -- except, some may be.
12         **MS. ARGUEDAS:**  Well, there's --
13         **THE COURT:**  DEA and so forth.
14         **MS. ARGUEDAS:**  Four or five of them are the DEA,
15   Customs --
16         **THE COURT:**  Let's talk, first, about those people over
17   which the government has no control.
18         **MS. ARGUEDAS:**  Has no control.
19         **THE COURT:**  Yeah.  I mean --
20         **MS. ARGUEDAS:**  Florida.
21         **THE COURT:**  Yeah.  As to those people, my
22   understanding is that they are in the process of compliance.
23   You appear -- from your point of view, they appear to be
24   reasonably prudent and reasonably responsive, and it's going to
25   take some time.

1   And the answer to that is, fine, let that go forward.
2   Take some time.  I don't see any reason for me to get involved
3   unless you say to me, look, we're having a real problem with
4   Ho-Ho-Cus, New Jersey Police Department, and they're just -- we
5   think they have some information and so forth.
6       And at that point I can do a number of things.  One of
7   which is direct the United States government to contact them
8   and to -- without going into the substance of whatever you're
9   requesting, and say to them that the Court is interested and
10  the United States government is interested in their expediting
11  the request.
12          **MS. ARGUEDAS:**  We --
13          **THE COURT:**  If you want me to do that.  Or if you
14  think that that's going to be a problem.
15       The way I approach this problem, which is different from
16  the way you approach this problem, but I approach this problem
17  from the point of view of ensuring that you have enough
18  information to adequately present your defense in a timely way.
19       The indictment was filed in 2014, I think.  At least it
20  indicates that.  The -- you know, the trial is scheduled for
21  2016.
22       There, of course, are always things that you could have
23  that may or may not be of assistance to you.  But that at some
24  point a decision has to be made -- and it's made by the
25  Court -- as to when you've had enough time, enough effort,

1  enough process, to ensure that at least you can present your
2  defense.
3      I understand that we may differ on that issue, but we're
4  not there yet.  I don't have to deal with it yet.  Though you
5  may think you're keying it up right now, the way I approach it
6  is, let's break it down into pieces.  First piece being that
7  the Court stands ready to intervene if you feel that a private,
8  that is, a nonUnited States federal government entity is not
9  being responsive.  That's number one.
10      Number two is, what about those United States governmental
11 entities that -- DEA and so forth, how are they dealing with
12 these requests?  And to that I'm a little unclear as to whether
13 or not you have, quote, a complaint that they're not being
14 responsive in an expeditious way.
15          **MS. ARGUEDAS:**  Let me address --
16          **THE COURT:**  I will tell you everything I'm doing -- so
17 no surprises to you -- is to try to keep the February 29th
18 trial date, you see.  So --
19          **MS. ARGUEDAS:**  We're not going -- let me start.
20          **THE COURT:**  I mean, you know --
21          **MS. ARGUEDAS:**  Let me tell you why, and I think
22 you'll --
23          **THE COURT:**  But I'm not there -- I may ultimately
24 agree with you.
25          **MS. ARGUEDAS:**  Yeah.

1  **THE COURT:** But the way I approach it is, if I
2  ultimately agree with you it's because I've taken all of those
3  steps and you've taken all those steps, and they haven't been
4  successful.
5  **MS. ARGUEDAS:** Right.
6  **THE COURT:** And what I'm saying to you is we're not
7  there yet. We haven't taken all of those steps. I've got
8  quite a few steps I can take.
9  **MS. ARGUEDAS:** And let me -- let me address that. Let
10 me, first of all, say --
11 **THE COURT:** I wonder if we're better going off through
12 the whole list and coming back to what you want to do. Because
13 what I want to do is tell the government that there are some
14 things that they have to do. And I'm trying to figure out how
15 the government hasn't -- how the government is turning over
16 reams of materials now, in September --
17 **MS. ARGUEDAS:** Well, can I -- let me say, first of
18 all, Judge --
19 **THE COURT:** Yes, yes.
20 **MS. ARGUEDAS:** -- that of all the people I have spoken
21 to on the subject of we need to continue the trial date to next
22 September, no one was more unhappy about that than the people
23 at FedEx, than my clients at FedEx. They hate this idea. They
24 hate putting off their day in court. They are miserable.
25     However, what I said to them, which I would say now to you

1  is, we don't have a choice.  And the reason why we don't have a
2  choice is because we have got to have all the evidence that
3  this Court and we have talked about many times, which is the
4  evidence that is directly relevant to our case about what FedEx
5  was told by the government, what FedEx did, what FedEx's
6  relationship was with their -- the online pharmacy in general
7  and the specific co-defendants, co-conspirators, alleged
8  co-conspirators.
9       That information, for example, a huge amount of that
10 information was just given to us on July 22nd --
11          **THE COURT:**  How could that be?
12          **MS. ARGUEDAS:**  Well --
13          **THE COURT:**  No, no.  I need some explanation.  How?
14          **MS. ARGUEDAS:**  And more is coming in September.
15          **THE COURT:**  How could that be?
16          **MS. ARGUEDAS:**  Well, I guess I don't -- I don't have
17 an ability to address that.
18          **THE COURT:**  I'll ask the government.  Why is it that
19 the type of information that the defense has characterized a
20 particular way has yet to be produced?
21          **MR. WALDINGER:**  These are not materials that the
22 government intends to use in its case-in-chief.
23       My understanding, as set forth in the government's brief,
24 is that the government, in response to concerns expressed by
25 counsel for FedEx, has gone out and searched for additional

1   materials that we did not identify in the original productions
2   of multiple, multiple gigabytes of information.  We've gone
3   and -- and obtained additional records.
4           **THE COURT:**  But let me -- maybe I -- I tried to make
5   it clear last time to Ms. Ault.  I don't know whether you were
6   here or not.  But I want to make it clear this time.
7       The evidence in the case doesn't depend on how the
8   government views its case.  Otherwise, why even bother having a
9   trial?  Why not just phone it in?  Why not just say:  Here is
10  the evidence we care about.  This evidence points to guilt, in
11  our view; and, therefore, the defendant is guilty.
12      It doesn't work like that.  As you well know, in the
13  system there are things called a defense.  In a state-of-mind
14  case they are key.  It is not just what the government selects
15  as being indicative of guilt.  It's, what is the evidence
16  presented by both sides which demonstrates a particular state
17  of mind, whether from the government's point of view it
18  demonstrates guilt and from the defense point of view it
19  demonstrates innocence?
20      So it's not -- you can't answer my question by saying,
21  "We've given them everything that we rely on in our
22  case-in-chief," because the case is much bigger than that.
23      I would also ask you a question, which has been of concern
24  to me for some period of time.  Is there any federal
25  prosecution, of which you're aware, of a recognized

```
 1   commercial -- commercial -- what do you call yourselves?
 2           MS. ARGUEDAS:  Common carrier.
 3           THE COURT:  Common carrier.  Is there any, for this
 4   type of event --
 5           MS. ARGUEDAS:  No.
 6           THE COURT:  I don't want to hear from you.  I want to
 7   hear from the government.
 8       Can you point, in the last ten years, to a single
 9   prosecution, criminal prosecution -- I don't care about civil,
10   because you guys decided to go criminally.
11       Is there another criminal prosecution in the United States
12   of America of a common carrier which it is recognized is
13   engaged in legitimate business transactions -- so it's not just
14   set up for the purpose of delivering drugs -- of this type?  Is
15   there one?
16           MR. WALDINGER:  I don't know offhand, Your Honor.
17           THE COURT:  Okay.  I want you to find out for me.
18           MR. WALDINGER:  Okay.
19           THE COURT:  All right.
20           MS. ARGUEDAS:  I know.  I know the answer.
21           THE COURT:  I don't want your answer.
22           MS. ARGUEDAS:  Okay.
23           THE COURT:  I want their answer.  I want their answer.
24   I want the government to tell me.
25       Now, if their answer is this is the first, which is what
```

```
 1  you think, that's an interesting -- that's an interesting fact.
 2  And it's a fact that has a number of ramifications, not the
 3  least of which is that the government, in a first-time-ever
 4  prosecution, can delineate the -- the parameters of what is
 5  evidentiary in terms of establishing a state of mind of an
 6  otherwise innocent commercial enterprise.
 7           MR. WALDINGER:  And, Your Honor, we're not doing that.
 8      I think Ms. -- Ms. Ault has worked very diligently.  I
 9  have assigned a paralegal to pretty much work on this solely.
10      And I don't think Ms. Arguedas is saying that we're not
11  being forthcoming.  We are producing -- our initial production
12  was -- was broad.  And based on questions from FedEx, we've
13  produced more.
14      It's a big government, Your Honor.  We can't just say,
15  "Come on in and look into the DEA's computer files for what you
16  want," because you'd get to look at everything.
17      We have to do it by them asking for stuff; us looking for
18  stuff.  And that's what we're doing.  And it's been -- I think
19  we've taken a reasonable approach.
20      It's a huge amount of material.  Ms. Arguedas could just
21  as easily be here saying, "They're burying us with stuff.
22  They're giving us too much."  It's a huge amount of material.
23           MS. ARGUEDAS:  I need to --
24           THE COURT:  So whether it's a huge amount or not,
25  what's your view as to -- as to the reasonableness of a trial
```

1  taking place on February 29th?
2      If you're standing in front of me and telling me, look,
3  Judge, we're working hard, but the materials that you have --
4  or I have ordered or I have sanctioned and so forth are so vast
5  that we cannot -- we cannot comply with these requests, that
6  is, we cannot satisfy these requests until such and such a
7  date --
8          **MR. WALDINGER:**  We expect to be done by September.
9          **MS. ARGUEDAS:**  Delivering it.  But, Judge, I need
10 to --
11         **THE COURT:**  So isn't the answer, Fine.  Let's see?
12 They will deliver in September, and I will see you in October.
13 And you will have had all the materials.  And then you can tell
14 me -- you can tell me then if you have a problem going to trial
15 February 29th.
16     So you might.  You might.
17         **MS. ARGUEDAS:**  Your Honor --
18         **THE COURT:**  And you might not.
19         **MS. ARGUEDAS:**  I need to comment on some of the points
20 that he just made.  And then I need to tell you why that is not
21 a workable situation for us.
22         **THE COURT:**  Okay.
23         **MS. ARGUEDAS:**  First of all --
24         **THE COURT:**  I'm trying to make your clients happy.
25         **MS. ARGUEDAS:**  I want to make them happy too.  But

1   I've crossed the bridge already about what our constitutional
2   obligations are --
3           **THE COURT:**  Okay.
4           **MS. ARGUEDAS:**  -- in terms of having a fair trial.
5       But in terms of what the government just said, I want to
6   make some gigantic corrections.  Which is, our view is they had
7   an obligation to give us every single thing they are in the
8   process of giving us.  They are not -- they are Rule 16
9   discovery.  It is not some extra request that FedEx made.  It
10  is plain ole Rule 16 discovery.
11      And I can't tell you why they are so delayed in giving it
12  to us.  I'm just assuming it's mammoth for them too.  We got
13  some of it July 22nd, 11 gigabytes.  And we have some that has
14  been promised to us in September, and it's another huge chunk.
15      A very major complaint that I have is that the government,
16  Kirstin Ault in particular, has consistently, forever and
17  unyieldingly never understood the importance of any of this
18  evidence, due to the fact that she fought the subpoenas over
19  and over again, even after the Court ruled, and kept coming
20  back and saying none of this matters.
21      In the pleadings that she just filed in this motion to
22  continue, she says, I'm giving them all this extra discovery as
23  some kind of a bonus.  It's irrelevant, but I'm giving it to
24  them so no one can complain.
25      I don't even know what that means.  Does that mean the

1  government is giving it to me and I shouldn't read it?  Is that
2  how this practice, she thinks, would go?
3       But my point is this:  She does not understand the
4  significance of this evidence, which I think is probably why
5  FedEx got indicted in the first place, is that the government
6  doesn't understand the significance of this evidence.
7       But it is extremely significant.  It goes to the heart of
8  the case.  Much of it goes to our relationship with our
9  co-conspirators.
10      So when you say, Come back to us in October, the first
11 thing I want to tell you is, With the February trial date we
12 had all the motions and all the schedule, which meant that we
13 would be filing motions in two weeks.  Which, obviously, we
14 cannot do.
15      So right now I can say we can't meet the February date
16 because they haven't given us the discovery.  Forget about the
17 subpoenaed documents.  Although, I want to address that in a
18 second.  We can't do any of the premotions filings --
19           **THE COURT:**  Okay.  I understand that argument.
20           **MS. ARGUEDAS:**  I want to make a second argument,
21 please.  When we have this trial --
22           **THE COURT:**  Yeah.
23           **MS. ARGUEDAS:**  -- FedEx is a Fortune 50 company.  We
24 are probably going to have 75 to a hundred witnesses that are
25 going to be testifying --

| | |
|---|---|
| 1 | **THE COURT:** Really? |
| 2 | **MS. ARGUEDAS:** -- in this trial. From FedEx. Yes. |
| 3 | **THE COURT:** I've never had a case that large. |
| 4 | **MS. ARGUEDAS:** The government brought back 71 |
| 5 | witnesses for debriefings in the Grand Jury process. |
| 6 | We are going -- they were all -- |
| 7 | **THE COURT:** They had 71 witnesses? |
| 8 | **MS. ARGUEDAS:** Yes. They brought back 71 witnesses. |
| 9 | In fact, I think it's more. I think that's when I stopped |
| 10 | counting. |
| 11 | So when we have this trial, this big company is going to |
| 12 | have to transport 80 people, let's say -- |
| 13 | **THE COURT:** They're good at that. |
| 14 | (Laughter) |
| 15 | **THE COURT:** Listen. Of all the things -- and, by the |
| 16 | way, the next day. |
| 17 | (Laughter) |
| 18 | **THE COURT:** And if it's on a Saturday, they will all |
| 19 | be here. I got that. Okay. |
| 20 | **MS. ARGUEDAS:** We've got to have a date that we can |
| 21 | count on that is certain. |
| 22 | **THE COURT:** Listen. I have that. I have that. I |
| 23 | have that. Okay. |
| 24 | Here's what I'm going to do. I'm vacating the trial date, |
| 25 | against my better judgment and based upon your assertion. And |

1    I'm going to set a status conference the first week of October.
2    And I'm going to set a trial date as soon as I can.
3              **MS. ARGUEDAS:**  We're good with that.  We love that.
4              **THE COURT:**  As soon as I can.  And I will see you all
5    here the morning of October 6.
6              **MS. ARGUEDAS:**  Great.  My birthday.
7              **THE COURT:**  Oh.
8              **MS. ARGUEDAS:**  And, by the way --
9              **MR. WALDINGER:**  Day after mine.
10        (Laughter)
11             **THE COURT:**  I think the two of you should celebrate it
12   together.
13        (Laughter)
14             **MS. ARGUEDAS:**  Can we --
15             **THE COURT:**  I know both of you.  I think you are both
16   fabulous lawyers.  And you are two of the nicest people that I
17   know.  So I think that you would actually do very well
18   celebrating your birthday together.
19             **MS. ARGUEDAS:**  Terrific.
20        May I ask then, Your Honor, for a little intervention in
21   the way that you were describing about the discovery?  Because
22   I think this is a very --
23             **THE COURT:**  Here's what I think we should do.  Send me
24   a letter or a motion before October -- October 6.  And make
25   some concrete suggestions.

1     **MS. ARGUEDAS:**  For dates?  Like, for instance, for the
2  next chunk of discovery, for instance, they've said September.
3  It would be very helpful --
4     **THE COURT:**  Well --
5     (Simultaneous colloquy.)
6     **MS. ARGUEDAS:**  So if he said September 15th, then we'd
7  have a chance to know what it was by the time we came in here
8  on October 6th.
9     **THE COURT:**  You'll figure it out.  You've got people.
10    **MS. ARGUEDAS:**  I also grew up next to Ho-Ho-Cus, and
11 I've never heard anyone say that word in my life.
12    **THE COURT:**  I've got to be careful of that.  I'll be
13 careful in my references to New Jersey.
14    **MS. ARGUEDAS:**  October 6, at what hour?
15    **THE CLERK:**  10 o'clock.
16    **MS. ARGUEDAS:**  10 o'clock.  Great.  Thank you, Your
17 Honor.
18    **THE COURT:**  Now, before then, I would like you to
19 file, if you will, by the end of September, a -- a report as to
20 whether or not there have been any federal criminal
21 prosecutions of common carriers for whatever it is.  Drug
22 running or whatever.  I don't know how to characterize it.
23    **MR. WALDINGER:**  Or any substance or any -- I mean,
24 we're talking --
25    **THE COURT:**  You can do it broadly.  You can

1  characterize it any way you want to characterize it.  But I
2  want to know case.  I want to know name and case.  Okay.  And
3  date.  That's what I want to know.  I want a list.
4         **MS. ARGUEDAS:**  This is a case --
5         **THE COURT:**  It should be probably not more than --
6  well, we'll see.
7         **MS. ARGUEDAS:**  It will be really short.
8         **THE COURT:**  It will either be short or it will be not
9  so short.
10        **MS. ARGUEDAS:**  This is a case, more than any one I
11 have ever had, where I wish we had a summary judgment procedure
12 in criminal cases.  I think they are very lucky in civil court.
13        **THE COURT:**  The fact of the matter is, I've looked at
14 it.  And it seems to me that this is an issue of fact, that
15 there may be a disputed issue of fact.  And that's a case that
16 has to go to the jury.  I mean, that's the process.
17    So there we are.
18        **MR. WALDINGER:**  Your Honor, we do --
19        **THE COURT:**  Yeah.
20        **MR. WALDINGER:**  You've previously made a finding of
21 exclusion of time.  But I think now that the trial date is
22 vacated, out of an abundance of caution --
23        **THE COURT:**  I will exclude time for effective
24 preparation to October 6.  And then I'll probably do a further
25 exclusion, if that's what you like.

1   **MR. WALDINGER:** That would be fine. Based on
2   Ms. Arguedas' effective preparation.
3   **MS. ARGUEDAS:** Yeah.
4   **THE COURT:** Yes. Okay.
5   **MR. WALDINGER:** Thank you, Your Honor.
6   **MS. ARGUEDAS:** Thank you.
7   **THE COURT:** Thank you very much. And happy birthday
8   to both of you.
9       (At 10:30 a.m. the proceedings were adjourned.)
10                             - - - -
11
12                    **CERTIFICATE OF REPORTER**
13       I certify that the foregoing is a correct transcript
14   from the record of proceedings in the above-entitled matter.
15
16   DATE:   Monday, August 24, 2015
17
18
19           *Katherine Sullivan*
20   _____
21       Katherine Powell Sullivan, CSR #5812, RMR, CRR
                      U.S. Court Reporter
22
23
24
25