Cristina C. Arguedas (CalBN 87787)
　Email: arguedas@achlaw.com
Ted W. Cassman (CalBN 98932)
　Email: cassman@achlaw.com
Raphael M. Goldman (CalBN 229261)
　Email: goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

Allen J. Ruby (CalBN 47109)
　Email: allen.ruby@skadden.com
Jack P. DiCanio (CalBN 138782)
　Email: jack.dicanio@skadden.com
Patrick Hammon (CalBN 255047)
　Email: patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
　& FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for FedEx Corporation,
Federal Express Corporation and
FedEx Corporate Services, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, and FEDEX CORPORATE SERVICES, INC.,<br><br>　　　　　Defendants. | **No. CR 14-380 (CRB)**<br><br>**FEDEX DEFENDANTS' MOTION TO DISMISS COUNT EIGHTEEN**<br><br>Date: March 2, 2016<br>Time: 2:00 p.m.<br>Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

I.    INTRODUCTION .................................................................................................1

II.    THE ALLEGATIONS IN THE INDICTMENT........................................................2

III.    DISCUSSION .....................................................................................................3

    A.    The Jurisprudence Concerning "Proceeds" ...............................................3

    B.    Count Eighteen Does Not State a Money Laundering Offense Under § 1956(a)(1) ...................................................................................4

        1.    Section 1956(a)(1) Criminalizes Transactions in Proceeds, Not Transactions that Create Proceeds .........................................5

        2.    Congress Understood How to Criminalize the Mere Transportation of Monetary Instruments, But Did Not Do So in § 1956(a)(1)...................................................................................6

IV.    CONCLUSION....................................................................................................6

# TABLE OF AUTHORITIES

<u>Cases</u>

*Regalado Cuellar v. United States*, 553 U.S. 550 (2008) ..............................................6

*United States v. Mankarious*, 151 F.3d 694 (7th Cir. 1998)...........................................5

*United States v. Santos*, 553 U.S. 507 (2008)...........................................................3, 6

*United States v. Seward*, 272 F.3d 831 (7th Cir. 2001) .................................................5

*United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009) ......................................3, 4

*United States v. Webster*, 623 F.3d 901 (9th Cir. 2010).........................................3, 4, 5

*United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011)...................................................5


<u>Other Authorities</u>

18 U.S.C. § 1955........................................................................................................3

18 U.S.C. § 1956................................................................................................ *passim*

Federal Rule of Criminal Procedure 12 ...................................................................2, 4

## I. INTRODUCTION

On March 2, 2016 at 2:00 p.m. in the above-titled Court, FedEx Corporation, Federal Express Corporation and FedEx Corporate Services, Inc. (collectively, "FedEx") will and hereby do move this Court for an order dismissing Count Eighteen of the superseding indictment ("indictment"). Count Eighteen charges FedEx with a conspiracy to launder money. But the allegations fail to state an offense, and the count must be dismissed.

The purported conspiracy is predicated on allegations that FedEx made collect-on-delivery ("COD") shipments from a pharmacy shipper to recipients; collected from the recipients checks and money orders made out to the pharmacy shipper; and then returned the payments to the pharmacy shipper. Indictment (Dkt. 28) ¶¶ 115-120. According to the indictment, these COD transactions constituted money laundering.

Count Eighteen represents an effort to radically expand the scope of federal money laundering prosecutions under 18 U.S.C. § 1956(a)(1). That statute requires, *inter alia*, "a financial transaction" conducted with the "proceeds" of unlawful activity. Thus, this form of money laundering necessitates an underlying crime, such as the sale of contraband, and some subsequent use of the proceeds from that sale. Here, however, the government hopes to turn an alleged sale of contraband *itself* into money laundering. The financial transactions alleged are simply the transfer of payment instruments from the buyer to the seller of purported contraband. The "logic" that underlies the charge, if accepted by the courts, would essentially transform every drug sale into a money laundering crime as well. That result contravenes the Congressional intent underlying the money laundering statute, and the Court should not permit the

government to rewrite the statute.

## II. THE ALLEGATIONS IN THE INDICTMENT

Count Eighteen of the indictment asserts that "FEDEX delivered and attempted to deliver packages from Superior [Drugs] containing controlled substances for which FEDEX had agreed to collect payment, in the form of checks and money orders, from the recipients using FEDEX's cash-on-delivery (COD) service." Indictment (Dkt. 28) ¶ 116.[1] The indictment further avers that "FEDEX delivered and attempted to deliver to Superior [Drugs] checks and money orders it had collected as COD payments for deliveries of controlled substances unlawfully ordered from Internet pharmacies . . . ." *Id.* ¶ 118.

## III. DISCUSSION

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a defendant to file a motion to dismiss a charge if it fails to state an offense. Count Eighteen must be dismissed for that reason.

### A. The Jurisprudence Concerning "Proceeds"

The definition of "proceeds," as the term is used in 18 U.S.C. § 1956, changed during the period discussed in the indictment. As further discussed in Part III.B, *infra*, we do not believe that this change has any import for the outcome of this motion. Nonetheless, in order to properly set the jurisprudential stage, this section briefly discusses the law concerning the term "proceeds."

---

[1] Although the indictment references FedEx's purported "*cash*-on-delivery" service, FedEx's service is actually called "*Collect* on Delivery" because FedEx does not accept cash in connection with this service. *See* http://images.fedex.com/us/services/pdf/Service_Guide_2015.pdf (FedEx Service Guide) at 134.

Prior to May 20, 2009, the money laundering statutes did not define "proceeds." The Supreme Court addressed the definition in *United States v. Santos*, 553 U.S. 507 (2008).  A majority of the *Santos* Court agreed that the term "proceeds" could mean only "profits" — and not "gross receipts" — in the context of that case, which involved a defendant who had operated an illegal lottery.  *Id.* at 523.  According to a four-justice plurality, equating "proceeds" with gross receipts would turn nearly every violation of the illegal lottery statute, 18 U.S.C. § 1955, into a simultaneous money laundering violation — a "merger problem" that, according to the plurality, supported application of the rule of lenity in construing the term "proceeds."  *Id.* at 514-16.  Justice Stevens agreed with the plurality's reading in the context of a violation of § 1955, but rejected an across-the-board construction that would limit the term "proceeds" to mean profits in all cases.  *Id.* at 525-28.

The Ninth Circuit has found that "the holding that commanded five votes in *Santos* [is] that 'proceeds' means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*."  *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009).  The court of appeals elaborated that the "analysis of the 'merger' problem . . . must focus on the concrete details" of the alleged crime, rather than on the elements of the charged crime in general.  *Id.* at 815.

In *United States v. Webster*, 623 F.3d 901 (9th Cir. 2010), the Ninth Circuit observed that "four Justices in the *Santos* plurality stated that the merger problem might exist for certain payments among conspirators."  *Id.* at 906 (quoting the *Santos* plurality's statement that "any wealth-acquiring crime with multiple participants would

*U.S. v. FedEx Corp. et al.*  
No. CR 14-380 (CRB)                                          3                          Motion to Dismiss Count Eighteen

become money laundering when the initial recipient of the wealth gives his confederates their shares"). According to the *Webster* court, however, "this minority view is not controlling." *Id.* "[F]ive Justices in *Santos* expressly agreed that 'the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'" *Id.* The *Webster* panel therefore "read *Santos* as holding that where . . . a money laundering count is based on transfers among co-conspirators of money from the sale of drugs, 'proceeds' includes all 'receipts' from such sales." *Id.*

On May 20, 2009, Congress amended § 1956 to add a definition of "proceeds": "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." § 1956(c)(9). Nonetheless, the previous, judicially-constructed definition applies to conduct that occurred before May 20, 2009. *See Van Alstyne*, 584 F.3d at 814 n.12.

### B. Count Eighteen Does Not State a Money Laundering Offense Under § 1956(a)(1)

Regardless of which definition the Court applies to the term "proceeds," Count Eighteen must be dismissed.[2] None of the decisions cited above addressed a situation like the one at bench: a money laundering charge based on nothing more than the transfer of payment between the buyer and seller of alleged contraband.

---

[2] Even if the Court were to find that the resolution of FedEx's arguments would depend on whether "proceeds" were defined as "receipts" or "profits," Count Eighteen would still have to be dismissed for lack of venue pursuant to Rule 12(b)(3)(A)(i). The only overt acts alleged to have occurred after May 2009, when the new definition of "proceeds" was enacted, took place in Pennsylvania and Florida. Indictment (Dkt. 28) ¶ 120.

1.  Section 1956(a)(1) Criminalizes Transactions in Proceeds, Not Transactions that Create Proceeds

Even if "proceeds" is defined to mean "gross receipts," the alleged conduct does not constitute the type of money laundering crime charged in the indictment. 18 U.S.C. § 1956(a)(1) applies only when someone conducts a financial transaction with the *proceeds* of unlawful activity. The elements of the offense thus presuppose a two-step process: (1) someone obtains proceeds by means of a crime, and then (2) someone uses those proceeds in a financial transaction. *See United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011) ("[T]ransactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction . . . ." (quoting *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001)); *see also United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998) ("[M]oney laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds.").[3] Here, the government's allegation is that FedEx collected COD payment instruments from recipients of pharmaceuticals and delivered the payment instruments to the pharmacy shipper. The alleged "financial transaction" is the same transaction that constituted the purported underlying crime. That is not money laundering in violation of § 1956(a)(1).

The government's charging theory would lead to absurd results. If obtaining proceeds by selling contraband was by itself money laundering under § 1956(a)(1), then

---

[3] The Ninth Circuit's *Webster* decision does not compel a different result. *Webster* held that "transfers among co-conspirators of money from the sale of drugs" do not raise the merger problem identified by the *Santos* Court. 623 F.3d at 906. We believe *Webster* is wrongly decided and hereby preserve our objection to its holding. In any event, however, *Webster*'s holding is inapplicable here. The transfers about which the *Webster* panel rendered its holding were transfers that occurred once the funds had been obtained by conspirators. *Webster* does not hold that the mere payment from a drug purchaser to a seller by itself constitutes money laundering.

the government could charge a money laundering count in every case in which someone bought drugs. As the *Santos* plurality put it, it is difficult to identify an "explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime." 553 U.S. at 517. Plainly, Congress did *not* want to create such a regime, and the prosecution should not be allowed to do it in Congress's stead.

### 2. Congress Understood How to Criminalize the Mere Transportation of Monetary Instruments, But Did Not Do So in § 1956(a)(1)

A review of another provision in § 1956 further demonstrates the impropriety of the charge in Count Eighteen. Congress *did* choose to punish certain transportations of monetary instruments generated by illegal activity: section 1956(a)(2) makes it illegal to transport such a monetary instrument from the United States to or through a foreign jurisdiction. But Count Eighteen does not charge a conspiracy to violate subsection (a)(2), no doubt because the alleged transfers in question occurred entirely within the United States.

Subsections (a)(1) and (a)(2) thus differ in important ways. Subsection (a)(1) is intended to punish transactions that occur subsequent to the receipt of proceeds, whereas subsection (a)(2) more simply punishes the transportation of proceeds if the proceeds pass out of the United States. *See Regalado Cuellar v. United States*, 553 U.S. 550, 556 (2008). The conduct alleged in Count Eighteen falls into neither category. Accordingly, Count Eighteen fails to state a claim, and it must be dismissed.

## IV. CONCLUSION

For the reasons discussed herein, the Court should dismiss Count Eighteen of

1. the indictment for failure to state an offense.

Dated: January 13, 2016

Respectfully submitted,                    ARGUEDAS, CASSMAN & HEADLEY, LLP

By: _____/s/_____
        Raphael M. Goldman
        803 Hearst Avenue
        Berkeley, CA 94710
        (510) 845-3000

        Counsel for Federal Express
        Corporation, FedEx Corporation and
        FedEx Corporate Services, Inc.