Cristina C. Arguedas (CalBN 87787)
    Email: arguedas@achlaw.com
Ted W. Cassman (CalBN 98932)
    Email: cassman@achlaw.com
Raphael M. Goldman (CalBN 229261)
    Email: goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

Allen J. Ruby (CalBN 47109)
    Email: allen.ruby@skadden.com
Jack P. DiCanio (CalBN 138782)
    Email: jack.dicanio@skadden.com
Patrick Hammon (CalBN 255047)
    Email: patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for FedEx Corporation,
Federal Express Corporation and
FedEx Corporate Services, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, and FEDEX CORPORATE SERVICES, INC.,<br><br>Defendants. | **No. CR 14-380 (CRB)**<br><br>**REPLY IN SUPPORT OF FEDEX DEFENDANTS' MOTION TO DISMISS COUNT EIGHTEEN**<br><br>Date: March 2, 2016<br>Time: 2:00 p.m.<br>Hon. Charles R. Breyer |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     THE TRANSACTIONS DID NOT INVOLVE "PROCEEDS" ...............................2

III.    IT IS IRRELEVANT WHETHER "THE DELIVERY OF DRUG MONEY IS A
        SEPARATE TRANSACTION FROM THE DELIVERY OF DRUGS" .................5

IV.     CONGRESS UNDERSTOOD HOW TO CRIMINALIZE THE MERE
        TRANSPORTATION OF MONETARY INSTRUMENTS ...................................6

V.      CONCLUSION..................................................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*United States v. Christo*, 129 F.3d 578 (11th Cir. 1997)..................................................4

*United States v. Edgmon*, 952 F.2d 1206 (10th Cir. 1991)............................................3

*United States v. Johnson*, 971 F.2d 562 (10th Cir. 1992)................................... *passim*

*United States v. Mankarious*, 151 F.3d 694 (7th Cir. 1998)...........................................4

*United States v. Moreland*, 622 F.3d 1147 (9th Cir. 2010) ............................................7

*United States v. Santos*, 553 U.S. 507 (2008)........................................................2, 4

*United States v. Savage*, 67 F.3d 1435 (9th Cir. 1995) ........................................3, 5, 6

*United States v. Seward*, 272 F.3d 831 (7th Cir. 2001) ............................................4, 5

*United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009) ........................................3

*United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011)............................................4, 5


<u>Other Authorities</u>

18 U.S.C. § 1956.................................................................................. *passim*

18 U.S.C. § 1957.....................................................................................3, 5

I.      **INTRODUCTION**

FedEx Corporation, Federal Express Corporation and FedEx Corporate Services, Inc. (collectively, "FedEx") seek an order dismissing Count Eighteen of the superseding indictment ("indictment").  The charge arises out of FedEx's alleged collection of monetary instruments from recipients of online pharmacy shipments and transportation of the monetary instruments back to online pharmacy shippers.  *See* Dkt. 28 ¶¶ 114-120.  FedEx demonstrated in its opening brief that this charge must be dismissed because it fails to state a money laundering offense.

The government's opposition, Dkt. 182, misapprehends FedEx's contentions and the government's counter-arguments are therefore entirely misdirected.  The government describes FedEx's motion as an assertion that "the delivery of money is not a 'transaction' as defined by" 18 U.S.C. § 1956.  Dkt. 182 at 3, *see also id.* at 5.  But that is not FedEx's claim at all.  Rather, we contend that the funds involved in the transactions charged in Count Eighteen — payments from recipients to sellers of medications — do not constitute "*proceeds*" under § 1956.  *See* Dkt. 158, *passim*.  The government does not cite to a single authority that addresses that issue.

The government also stresses the differences between promotional and concealment money laundering.  *See, e.g.,* Dkt. 182 at 7-8.  These arguments again reveal the government's confusion.  This distinction is entirely beside the point.

II.     **THE TRANSACTIONS DID NOT INVOLVE "PROCEEDS"**

As FedEx observed in its opening papers, 18 U.S.C. § 1956(a)(1) applies only when someone conducts a financial transaction with the *proceeds* of unlawful activity. The statute thus presupposes a two-step process: (1) someone obtains proceeds by

means of a crime, and then (2) someone uses those proceeds in a financial transaction.

The fault with the government's charging theory does not lie in its allegation that collecting a payment constitutes a "transaction." The definition of "transaction" is broad. *See* § 1956(c)(3). Rather, the fatal flaw arises in the assertion that the monetary instruments used in the charged transactions constituted "proceeds." Section 1956(c)(9) defines "proceeds" to mean "property *derived from* or *obtained or retained* . . . through" an unlawful activity. (Emphasis added).[1] *See also merriam-webster.com* (accessed February 12, 2016) ("the total amount *brought in*" (emphasis added)). Money that is still *in the process* of being transferred from a buyer to a seller cannot yet be said to be "derived" or "obtained" from the sale. Thus, when a drug purchaser is still in the process of transferring payment to the seller — as is the alleged circumstance here — that payment has not yet ripened into "proceeds" that can be used for a subsequent transaction.

The Tenth Circuit recognized this sensible principle in *United States v. Johnson*, 971 F.2d 562 (10th Cir. 1992). The *Johnson* court confronted a case in which the defendant was accused of perpetuating a scheme to defraud investors. *Id.* at 564. The defendant was also charged with money laundering "based on twenty-eight separate wire transfers of funds from investors to the defendant's account." *Id.* at 567. The court overturned the defendant's convictions on these counts, ruling as follows:

> [B]oth the plain language of § 1957 and the legislative history behind it suggest that Congress targeted only those transactions occurring after proceeds have been obtained from the underlying unlawful activity. At the

---

[1] As discussed in our opening papers, this definition of "proceeds" was added to § 1956 in May 2009. Prior to that date, the definition was controlled by *United States v. Santos*, 553 U.S. 507 (2008) and its progeny. *See* Dkt. 158 at 2-4. FedEx contends that, under either definition, the funds at issue here were not "proceeds."

very least, the statute is ambiguous on this point because, after examining all the relevant material which might aid us in construing its provisions, a reasonable doubt persists as to the statute's intended scope . . . . [¶]

The underlying criminal activity in this case was wire fraud, which the defendant accomplished by causing the investors to wire funds to his account.  Whether or not the funds that were wired to the defendant were "criminally derived property" depends upon whether they were proceeds obtained from a criminal offense at the time the defendant engaged in the monetary transaction.  We find they were not.  Section 1957 appears to be drafted to proscribe certain transactions in proceeds that have already been obtained by an individual from an underlying criminal offense.   The defendant did not have possession of the funds nor were they at his disposal until the investors transferred them to him.   The defendant therefore cannot be said to have obtained the proceeds of the wire fraud until the funds were credited to his account.  Thus, the transfers alleged in counts four through thirty-one of the indictment were not transactions in criminally derived property and the defendant's convictions on those counts are reversed.

*Id.* at 570-71.

Although *Johnson* involved § 1957 money laundering, its reasoning is equally applicable to the crime set out in § 1956(a)(1)(A)(i).  Indeed, the *Johnson* court relied on *United States v. Edgmon*, 952 F.2d 1206 (10th Cir. 1991), a case that involved § 1956 laundering.  *See Johnson*, 971 F.2d at 569.  Furthermore, the Ninth Circuit has approved the holding of *Johnson* in a case involving both § 1956 and § 1957 money laundering, although the court did not have occasion to apply the holding.  *See United States v. Savage*, 67 F.3d 1435, 1441-42 (9th Cir. 1995) ("We conclude that 'proceeds' are funds obtained from *prior, separate criminal activity* . . . . [¶] . . . . Our conclusion is consistent with the Tenth Circuit's conclusion that 'criminally derived property' is the proceeds, from an underlying criminal offense, obtained by a *defendant before the defendant engages in the monetary transaction.*" (emphasis added), *abrogated on other grounds as stated in United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009);

1   *see also United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011) ("[T]ransactions that

2   created the criminally-derived proceeds must be distinct from the money-laundering

3   transaction . . . ." (quoting *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001));

4   *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998) ("[M]oney laundering

5   criminalizes a transaction in proceeds, not the transaction that creates the proceeds.");

6   *United States v. Christo*, 129 F.3d 578, 579-80 (11th Cir. 1997) (reversing conviction

7   and observing that "[m]oney laundering is an offense to be punished separately from an

8   underlying criminal offense").[2]

9        The funds at issue here, like the funds in *Johnson*, were not "at [the] disposal" of

10   the alleged conspirators until they were received by Superior Drugs.  Count Eighteen

11   asserts that FedEx "delivered and attempted to deliver packages from Superior

12   containing controlled substances for which FEDEX had agreed to collect payment, in

13   the form of checks and money orders," and that it thereafter "deliver[ed] to Superior

14   checks and money orders it had collected as COD payments."  Dkt. 28 at ¶ 116.[3]  The

15   indictment asserts that, in so doing, FedEx was participating in a conspiracy with

16   Superior Drugs and others to launder money.  Dkt. 28 at 115.  As the indictment

_____

[2] The cited cases preceded *Santos*, 553 U.S. 507, and the legislative amendment to § 1956, which added a new definition of "proceeds" to the statute, *see* § 1956(c)(9).  But neither *Santos* nor the new subsection (c)(9) are in any way inconsistent with the holdings of these cases, and they remain good law.  Indeed, as discussed, the new definition of "proceeds" expressly defines proceeds as "property *derived from* or *obtained or retained* . . . through" an unlawful activity, § 1956(c)(9) (emphasis added), and it is therefore consonant with the holdings of *Johnson*, *Savage* and the other cited cases.

[3] The government's papers imply that FedEx offered its collect-on-delivery service as a nefarious bonus to alleged co-conspirators.  Dkt. 182 at 4-5.  That is ridiculous.  Like every other action FedEx took in this case, its provision of COD services was a normal part of its provision of shipping services to the general public.

concedes, the COD payments were "checks and money orders" payable to Superior —
FedEx could not itself have turned these instruments into usable funds.  Thus, the
indictment's charge is necessarily based on the premise that simply collecting payments
in exchange for controlled substances can constitute promotional money laundering.
That logic runs afoul of the statutory definition of "proceeds" and the lessons of *Johnson*
and *Savage*.

     The government tries to distinguish *Wilkes* by observing that the case involved
concealment money laundering.  Dkt. 182 at 2-3, 5-6.  Again, that is beside the point.
Both a violation of § 1956(a)(1)(A)(i), the promotional money laundering statute charged
in the case at bench, and a violation of § 1956(a)(1)(B)(i), the concealment money
laundering statute charged in *Wilkes*, require a transaction in "proceeds."  Indeed,
*Johnson*, *Savage* and *Seward* all applied the principle we espouse in the context of 18
U.S.C. § 1957, which criminalizes *any* knowing transaction in "proceeds obtained from a
criminal offense."  *See Seward*, 272 F.3d at 836; *Savage*, 67 F.3d at 1442; *Johnson*,
971 F.2d at 570-71; 18 U.S.C. § 1957(a), (f)(1) & (f)(2).  Clearly, the distinction between
concealment and promotional money laundering is not relevant to the question whether
the transactions at issue had ripened into "proceeds."

**III.  IT IS IRRELEVANT WHETHER "THE DELIVERY OF DRUG MONEY IS A
SEPARATE TRANSACTION FROM THE DELIVERY OF DRUGS"**

     The government next strives to show that the delivery of drugs is a "separate
transaction" from the payment for drugs.  Dkt. 182 at 5-6.  This is another misplaced
argument.

     The question is not whether the two parts of a drug sale are conceptually — or
even legally — distinct.  The question is whether a payment for drugs meets the

statutory definition of "proceeds."  As we have shown, it does not.  Payment for a sale does not constitute "proceeds" until the seller actually has the money.

If it were otherwise, then every time someone bought illicit drugs, the buyer's payment to the dealer would constitute money laundering.  Congress did not intend to cast such a wide net.  *See Savage*, 67 F.3d at 1441 ("The legislative history indicates that Congress passed the money laundering statutes to criminalize the means criminals use to cleanse their ill-gotten gains.  We conclude that 'proceeds' are funds obtained from prior, separate criminal activity."); *see also Johnson*, 971 F.2d at 569.

## IV.    CONGRESS UNDERSTOOD HOW TO CRIMINALIZE THE MERE TRANSPORTATION OF MONETARY INSTRUMENTS

As FedEx pointed out in its opening papers, *see* Dkt. 158 at 6, another provision in § 1956 sheds important light on the issue at hand.  Section 1956(a)(2)(A) makes it illegal to transport a monetary instrument from the United States to or through a foreign jurisdiction with the intent to promote illegal activity — thus demonstrating that Congress understood its ability to criminalize the mere transportation of monetary instruments.

The government fashions a confusing argument about the difference between concealment and promotional money laundering.  Dkt. 182 at 7-8.  Once again, its argument entirely misses the point.

Here is the true point.  Section 1956(a)(1)(A)(i), the statute that appears in the indictment against FedEx, criminalizes transactions that involve "the proceeds of specified unlawful activity" and are intended to promote the unlawful activity.  Section 1956(a)(2)(A) is similar, but not precisely the same.  It criminalizes the foreign transportation of monetary instruments with the intent to promote an unlawful activity.  Section 1956(a)(2)(A) does *not*, however, require that the monetary instruments

constitute "proceeds of specified unlawful activity."  *See United States v. Moreland*, 622 F.3d 1147, 1167 (9th Cir. 2010) ("while § 1956(a)(2)(B) requires a showing of 'proceeds,' § 1956(a)(2)(A) does not").[4]

Therein lies the difference.  Congress could have drafted subsection (a)(1)(A)(i) so that it described a crime that simply involved any transportation of funds with the intent to promote unlawful activity.  But it did not.  Instead, Congress chose to add the requirement that the funds be "proceeds of unlawful activity."  The government's argument would write that requirement out of the statute.  The Court should therefore reject it.

## V.    CONCLUSION

For the reasons stated herein, and those discussed in FedEx's opening motion papers, Count Eighteen of the superseding indictment should be dismissed.

Dated:  February 24, 2016

Respectfully submitted,                  ARGUEDAS, CASSMAN & HEADLEY, LLP


By: _____/s/_____
                   Raphael M. Goldman
                   803 Hearst Avenue
                   Berkeley, CA 94710
                   (510) 845-3000

                   Counsel for Federal Express
                   Corporation, FedEx Corporation and
                   FedEx Corporate Services, Inc.

---

[4] This was no accident.  Congress included the "proceeds" requirement in the crime described by § 1956(a)(2)(B).