Cristina C. Arguedas (CalBN 87787)
Email: arguedas@achlaw.com
Ted W. Cassman (CalBN 98932)
Email: cassman@achlaw.com
Raphael M. Goldman (CalBN 229261)
Email: goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

Allen J. Ruby (CalBN 47109)
Email: allen.ruby@skadden.com
Jack P. DiCanio (CalBN 138782)
Email: jack.dicanio@skadden.com
Patrick Hammon (CalBN 255047)
Email: patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for FedEx Corporation, Federal Express Corporation and FedEx Corporate Services, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, and FEDEX CORPORATE SERVICES, INC.,

Defendants.

**No. CR 14-380 (CRB)**

**REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS TWELVE AND SEVENTEEN FOR LACK OF VENUE**

Date: March 2, 2016
Time: 2:00 p.m.
Hon. Charles R. Breyer

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Venue Law Generally ..... 1

B. Venue For a Section 1956(h) Conspiracy ..... 3

C. The Government's Venue Contentions Fail Every Test ..... 7

1. The Indictment's Boilerplate Venue Allegations Do Not Immunize the Charges from Dismissal ..... 8

2. The Indictment Does Not Allege that the Conspiratorial Agreement was Formed in this District ..... 9

3. The Alleged Financial or Monetary Transactions Involving the Laundered Proceeds Were Not Conducted in this District ..... 10

4. The Indictment Does Not Allege that a Co-conspirator Committed an Act in Furtherance of the Money Laundering Conspiracy in this District ..... 11

5. The Indictment Does Not Allege that FedEx Participated in the Transfer of Proceeds from this District to the District where the Financial or Monetary Transaction was Conducted ..... 13

V. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

Cases

*Hyde v. Shine*, 199 U.S. 62 (1905)....3, 10

*United States v. Anderson*, 328 U.S. 699 (1945) ....2, 3

*United States v. Ayo,* 801 F. Supp. 2d 1323 (D. Ala. 2011) ....8

*United States v. Barnard*, 490 F.2d 907 (9th Cir. 1973) ....2

*United States v. Bezmalinovic*, 962 F. Supp. 435 (S.D.N.Y. 1997) ....8

*United States v. Blechman,* 782 F. Supp. 2d 1238 (D. Kan. 2011) ....8

*United States v. Cabrales*, 524 U.S. 1 (1998) .... *passim*

*United States v. Corona*, 34 F.3d 876 (9th Cir. 1994) ....2, 12

*United States v. Evans*, 62 F.3d 1233 (9th Cir. 1995) ....3

*United States v. Gonzalez,* 683 F.3d 1221 (9th Cir. 2012)....3

*United States v. Hurwitz*, 573 F. Supp. 547 (S.D. W. Va. 1983)....8

*United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996)....3

*United States v. Johnson,* 323 U.S. 273 (1944) ....2

*United States v. Johnson*, 297 F.3d 845 (9th Cir. 2002)....3, 9

*United States v. Kahale*, No. 09-CR-159 (KAM), 2010 U.S. Dist. LEXIS 101757 (E.D.N.Y. Sept. 27, 2010)....9

*United States v. Lanza*, No. 3:03cr00025, 2006 U.S. Dist. LEXIS 7134 (W.D. Va. Feb. 10, 2006)....12

*United States v. Lukashov*, 694 F.3d 1107 (9th Cir. 2012)....11

*United States v. Meyers*, 847 F.2d 1408 (9th Cir. 1988) ....3

*United States v. Pace*, 314 F.3d 344 (9th Cir. 2002)....7, 12

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) ....3, 6, 7, 13

*United States v. Ruelas-Arreguin*, 219 F.3d 1056 (9th Cir. 2000) ....3

*Whitfield v. United States*, 543 U.S. 209 (2005) ....4, 13

<u>Other Authorities</u>

U.S. Const., Art. III, § 2, cl. 3 .....1

U.S. Const., Sixth Amendment .....1

18 U.S.C. § 1956 ..... *passim*

18 U.S.C. § 3237 .....5, 11

Federal Rule of Criminal Procedure 12 .....2

Federal Rule of Criminal Procedure 18 .....1

## I. INTRODUCTION

In its opposition papers, the government articulates four possible legal bases to support venue for the money laundering conspiracy charges in Counts Twelve and Seventeen. But a fair reading of the indictment reveals that the government has failed to allege facts that would establish venue under any of these tests.

- The indictment includes no allegation that the alleged money laundering conspiracies were formed in this district.
- The indictment includes no allegation that the alleged money laundering transactions began, continued or ended in this district.
- The indictment includes no allegation that an act in furtherance of the money laundering conspiracies was committed in this district, and the government's attempt to bootstrap overt acts from the alleged drug conspiracies must fail.
- There is no allegation that FedEx participated in the transport of the specific "proceeds" involved in the alleged money transactions from this district to the district where the transactions occurred.

Accordingly, Counts Twelve and Seventeen must be dismissed.

## II. ARGUMENT

### A. Venue Law Generally

As we noted in our moving papers, the founders considered proper venue so important that they enshrined it in two separate provisions of the U.S. Constitution. *See* Article III, § 2, cl. 3; U.S. Const., Sixth Amendment. As the Supreme Court has explained, "Rule 18 of the Federal Rules of Criminal Procedure, providing that 'prosecution shall be had in a district in which the offense was committed,' echoes the

constitutional commands." *United States v. Cabrales*, 524 U.S. 1, 6 (1998). Given this constitutional dimension, the courts have long recognized that "'[q]uestions of venue in criminal cases are not merely matters of formal legal procedure. They raise deep issues of public policy.'" *United States v. Barnard*, 490 F.2d 907, 910 (9th Cir. 1973) (quoting *United States v. Johnson,* 323 U.S. 273, 276 (1944)); *see also United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994).

It is simply wrong to assert, as the government does, that a defendant may not "move to dismiss an indictment prior to trial based on the absence, let alone the putative insufficiency, of a venue allegation." Govt. Opp. at 7. To the contrary, Rule 12(b)(3)(a)(1) expressly provides that a motion raising the defense of improper venue *must* be filed pretrial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Consistent with that Rule, the Supreme Court has on at least two occasions addressed government appeals from dismissals of an indictment for lack of venue without suggesting that the motion for dismissal was improper. *See Cabrales*, 524 U.S. at 10 (holding "that Missouri is not a place of proper venue for the money laundering offenses with which Cabrales is charged"); *United States v. Anderson*, 328 U.S. 699, 703 (1945) (reversing the district court's dismissal of the indictment for lack of venue based on the Court's finding that the indictment alleged facts establishing that the offense occurred in the forum district). Indeed, where the defect is apparent from the allegations in the indictment, a defendant risks waiver if he or she does not timely raise the issue:

> The right to proper venue . . . may be waived. Specifically, "if a defect in venue is clear on the face of the indictment, a defendant's objection must be raised before the government has completed its case," or the objection to venue will be waived.

*United States v. Johnson*, 297 F.3d 845, 861 (9th Cir. 2002) (citations omitted); *see also United States v. Evans*, 62 F.3d 1233, 1236 (9th Cir. 1995); *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1059 (9th Cir. 2000). As the Ninth Circuit explained in *Johnson*, in determining whether the defect in the indictment is apparent, the question is "whether the indictment contained allegations of fact that, if true, would sustain venue in the District . . . ." *Johnson*, 297 F.3d at 861; *see also United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (when considering a pretrial motion, the court "must presume the truth of the allegations" in the indictment.)

**B. Venue For a Section 1956(h) Conspiracy**

The parties essentially agree on the possible statutory bases for a finding of proper venue for the money laundering charges in Counts Twelve and Seventeen. First, generally under Rule 18 "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Anderson,* 328 U.S. at 703. "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). Under *Rodriguez-Moreno*'s so-called "essential conduct elements" test, venue for a conspiracy will lie in the district where the agreement was formed or in any district in which an overt act was committed in furtherance of the conspiracy. *See also Hyde v. Shine*, 199 U.S. 62, 76-77 (1905); *United States v. Gonzalez,* 683 F.3d 1221, 1224 (9th Cir. 2012); *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir. 1988).

However, in 2001, Congress enacted § 1956(i), a special venue provision for money laundering offenses, which provides as follows:

> (1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in-
>
> > (A) any district in which the financial or monetary transaction is conducted; or
> >
> > (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.
>
> (2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

Under this section, venue for the charged conspiracies will lie in any district (1) where an act in furtherance of the conspiracy was committed, (2) in which the venue would lie for the substantive money laundering offense, if completed, and (3) in which a prosecution for the underlying offense from which the allegedly laundered proceeds were derived, if the defendant "participated in the transfer of the proceeds … from that district to the district where the … transaction occurred."[1]

The first two bases for venue did not significantly modify the requirements of the general venue statutes and rules. But it is worth noting that the second basis for venue under § 1956(i) turns the focus of the inquiry back to the target substantive offense of

[1] Our only disagreement with the government's articulation of the law governing venue arises from its assertion, *see* Govt. Opp. at 5, that the Supreme Court's decision in *Whitfield v. United States*, 543 U.S. 209 (2005) resolved the question whether Congress intended the special venue provisions in § 1956(i) to be "permissive" — a supplement to the general venue rules — or instead to "supplant" the general venue rules. *Whitfield,* 543 U.S. at 217-18. It expressly did not. *Id*. However, the question is of no importance here because venue fails under every scenario, and so we will assume for the sake of argument that § 1956(i)'s venue rules are "permissive" while reserving our right to contest the issue at trial, if necessary.

the alleged conspiracy, here a violation of § 1956(a)(1)(A)(i). Under the "essential elements test," venue is properly found for the substantive offense of money laundering in the district or districts in which the offending transaction was committed. *Cabrales*, 524 U.S. at 6-7. By operation of the continuing offense provision of 18 U.S.C. § 3237(a), a money laundering transaction may be properly charged in any district in which the transaction was "begun, continued, or completed." *Id.* at 8.

The third basis for venue for a conspiracy charge under § 1956(i) was new: venue will also lie in a district in which the defendant "participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." In construing this provision, it is important to recognize that it was enacted by Congress in response to the Supreme Court's decision in *Cabrales*. We therefore pause to consider that decision.

In *Cabrales*, the defendant was charged in the Western District of Missouri with one count of conspiracy to avoid transaction reporting requirements and two substantive counts of money laundering. The defendant allegedly deposited $40,000 in a Florida bank and then, within a week, made four separate withdrawals of $9,500. The funds were derived from cocaine sales in Missouri. The indictment alleged that overt acts in furtherance of the conspiracy charge had also been committed in Missouri. The district court denied the defendant's motion to dismiss for lack of venue as to the conspiracy count based upon the government's allegations that the defendant "was present in Missouri during the conspiracy, lived with a conspirator in Missouri, and participated in various activities in Missouri in furtherance of the conspiracy." *Id*. at 4. However, the district granted the motion to dismiss the two substantive money laundering counts

because the transactions charged in were conducted entirely within the state of Florida. *Id.* at 4-5. The government appealed those dismissals.

In the Supreme Court, the government made an argument similar to the one it makes here. The government argued that the dismissal of the substantive charges was error because "venue for money laundering offenses is proper in the district in which the funds were unlawfully generated, even if the financial transaction that constitutes the laundering occurred wholly within another district." *Id*. at 5. The government further urged that the predicate drug offense was an "essential element" of the money laundering charge and that the latter offense "facilitated the [drug offense] and made it profitable by impeding its detection." *Id*. at 7-8. Emphasizing that the money laundering counts alleged criminal activity that occurred after the drug offenses were completed and that the alleged laundering transactions "began, continued and were completed only in Florida," *id*., the Court disagreed. The *Cabrales* Court held "that Missouri is not a place of proper venue for the money laundering offenses with which [the defendant] is charged." *Id*. at 9.

In *Rodriguez-Moreno*, another venue case decided the very next term, the high court further explained the contours of its holding in *Cabrales*:

> [L]ast Term in [*Cabrales*], we considered whether venue for money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii) and 1957 was proper in Missouri, where the laundered proceeds were unlawfully generated, or rather, only in Florida, where the prohibited laundering transactions occurred. As we interpreted the laundering statutes at issue, they did not proscribe "the anterior criminal conduct that yielded the funds allegedly laundered." *The existence of criminally generated proceeds was a circumstance element of the offense but the proscribed conduct – defendant's money laundering activity – occurred "after the fact" of an offense begun and completed by others*.

*Rodriguez-Moreno*, 526 U.S. at 280 n.4 (citations omitted; emphasis added). Thus,

*Rodriguez-Moreno* clarified the distinction between conduct elements (which confer venue) and circumstance elements (which do not) and re-emphasized that the predicate offense for a money laundering charge is only a "circumstance element," which does not confer venue. *Id*. at 280-281; *see also United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002).

Significantly, in response to *Cabrales*, Congress did not adopt the broad venue authorization for which the government had argued in that case. Section 1956(i) does not automatically confer venue in the district where the underlying offense was committed or where the proceeds for a money laundering charge were unlawfully generated. Instead, the section permits venue in the district where the underlying offense was committed only if the defendant "participated in the transfer of *the proceeds* of the specified unlawful activity from that district to the district where the financial or monetary transaction occurred." § 1956(i)(1)(B) (emphasis added).

**C. The Government's Venue Contentions Fail Every Test**

Under the above authorities, venue would properly lie in the Northern District of California if (1) the money laundering conspiratorial agreements were allegedly formed in this district, (2) an act in furtherance of the money laundering conspiracies allegedly occurred in this district, (3) a financial or monetary transaction involving the laundered proceeds allegedly began, continued or ended in this district, or (4) FedEx allegedly participated in the transfer of the laundered proceeds from this district to the district where the financial or monetary transaction is conducted. While there appears to be no controversy about these legal principles, the government's discussion of the issues evinces a lack of adherence to the rigors of these tests.

1. The Indictment's Boilerplate Venue Allegations Do Not Immunize the Charges from Dismissal

Before turning to a discussion of the government's proposed justifications for venue, we briefly address its assertion that the indictment's general venue allegations preclude further inquiry by the Court. Govt. Opp. at 7. It is a fact that Counts Twelve and Seventeen each contain boilerplate language alleging venue in this district: "in the Northern District of California and elsewhere." Dkt. 28 ¶¶ 63 & 108. Contrary to the government's position, however, numerous courts have evaluated the factual basis for venue despite the government's generalized allegation of proper venue. In *United States v. Ayo,* 801 F. Supp. 2d 1323, 1326 (D. Ala. 2011), for example, the court rejected the government's assertion that "as long as an indictment charges that the offense occurred in the district of prosecution, the defendant must face trial in that district." Proceeding to examine the indictment's specific factual allegations, the court found venue wanting for two charges and dismissed them. *Id*. at 1332. Similarly, in *United States v. Blechman,* 782 F. Supp. 2d 1238, 1242 (D. Kan. 2011), the indictment alleged that the defendants committed "offenses against the United States of America, in the District of Kansas and elsewhere . . . ." Nevertheless, after scrutinizing the indictment, the court found that venue did not lie for one count in the indictment as a matter of law and dismissed that charge. *Id.* at 1250; *see also United States v. Bezmalinovic*, 962 F. Supp. 435, 436, 441 (S.D.N.Y. 1997) (indictment alleged "in the Southern District of New York and elsewhere," but court dismissed the count for lack of venue); *United States v. Hurwitz*, 573 F. Supp. 547, 550 (S.D. W. Va. 1983) (court agreed to "pierce this boilerplate language and [found] that there is not proper venue over Counts Two through Fifteen in the Southern District of West Virginia"). In fact, the

Ninth Circuit has found that a defendant waived a venue objection because the defect was apparent on the face of the indictment even though the charge included a boilerplate allegation that the offense was committed in the forum district. *Johnson*, 297 F.3d. at 28-29 ("[T]his language does not alter our view that the venue issue was apparent from the indictment . . . ."); *see also United States v. Kahale*, No. 09-CR-159 (KAM), 2010 U.S. Dist. LEXIS 101757 at *44-52 (E.D.N.Y. Sept. 27, 2010).

These cases make good sense. The indictment demonstrates that the government was aware of the venue requirement and made specific factual allegations supporting venue where it could. Where, as here, the indictment's factual allegations betray deficient venue and the government's arguments fail to establish venue as a matter of law, the indictment's generalized allegations cannot be permitted to hamstring the parties and court with an unnecessary trial. Rather, the charges should be dismissed.

2. The Indictment Does Not Allege that the Conspiratorial Agreement was Formed in this District

The indictment assiduously avoids making any direct allegations at all concerning the residence or locations of any of the defendants, alleged co-conspirators, affiliates, associates and employees in any of the charges, including those that are the subject of this motion. *See e.g*. Dkt. 28 ¶¶ 1, 23, 24-28, 71-76. When the indictment does ascribe a location to one of the alleged co-conspirators, it is never in this district. *See, e.g.,* Dkt. 28 ¶ 48 ("On or about April 26, 2000, FEDEX delivered 30 pills of Meridia, a controlled prescription drug, from ChoiceRx, 14300 Justice Road, Ste. B, Midlothian, Virginia . . . ."); *see also* Dkt. 28 ¶¶ 49, 50, 51, 52, 54, 55 and 59. By contrast, the indictment frequently alleges that the alleged co-conspirators' *customers* were located in the

Northern District and that the online pharmacies sent prescription drugs into the Northern District. *See, e.g.,* Dkt. 28 ¶ 27 ("The Chhabra-Smoley Organization . . . ship[ped] those controlled substances *to customers in the Northern District of California and elsewhere in the United States.*" (emphasis added)); *see also* Dkt. 28 ¶ 31 ("[T]he Chhabra-Smoley Organization used [FedEx accounts] to illegally distribute controlled substances *into the Northern District of California and elsewhere in the United States*." (emphasis added)); Dkt. 28 ¶¶ 28, 75, 76 and 78.

Given these allegations, the only fair reading of the indictment is that none of the alleged conspirators were found in and/or joined the alleged agreement while in the Northern District of California. Regardless, Counts Twelve and Seventeen do not allege that the money laundering conspiracies were formed in the Northern District of California, and the government does not assert that the formation of the conspiracy is a basis for venue. Accordingly, venue does not lie per *Hyde*, 199 U.S. 62.

### 3. The Alleged Financial or Monetary Transactions Involving the Laundered Proceeds Were Not Conducted in this District

Counts Twelve and Seventeen allege generally that co-conspirators made payments to FedEx and that the payments "represented of the illegal sales of controlled substances . . . ." Dkt. 28 ¶¶ 66 and 67, 110 and 111. In addition, each count alleges nine specific examples of such payments. Dkt. 28 ¶¶ 69 and 113. But the indictment does not allege that any of these payments from alleged co-conspirators to FedEx began, continued or ended in the Northern District of California. Nor does the government contend that they were. Venue does not lie under § 1956(i)(1)(A) and § 3237(a).

4. The Indictment Does Not Allege that a Co-conspirator Committed an Act in Furtherance of the Money Laundering Conspiracy in this District

In support of its contention that venue should lie in the Northern District on the grounds that "an act in furtherance of the attempt or conspiracy took place" under § 1956(i)(2), the government makes several disjointed observations and assertions. First, the government suggests that the indictment's "numerous specific allegations of drug deliveries [by FedEx] to Northern District of California customers" constitute acts in furtherance of the money laundering conspiracies. Govt. Opp. at 8. Second — noting that the indictment also alleges that "internet pharmacy co-conspirators" paid FedEx with "proceeds these from illegal drug sales" and that the drug deliveries to Northern California customers are the "unspecified unlawful activity on which Counts Twelve and Seventeen are based" — the government asserts that "they" (i.e., the drug deliveries, apparently) "are an 'essential conduct element' that occurred in this district." *Id*.[2] Third, the government urges that the "first link" in the charged money laundering conspiracy "was the customers' payment for the illegal drugs they had ordered," and that some of those customers' payments "originated in this district." *Id*. Because this "first link" payment from Northern California customers to the alleged co-conspirators may have contributed to the "proceeds" that the co-conspirators later paid to FedEx, the government urges that venue is proper in this district. *Id*.

We do not profess to completely understand these arguments. But each appears

[2] The government's reliance on *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012) to support this assertion is inexplicable. *Lukashov* was a prosecution for crossing a state line with the intent of committing a sex act with a child. The case did not present, and the court did not consider, "the essential conduct elements" for a money laundering conspiracy.

to run afoul of two important principles. First, the government must establish venue for every charge in the indictment. *Pace*, 314 F.3d at 349; *Corona*, 34 F.3d at 879. The fact that venue lies for one count will not confer venue on another count. Here, the government blatantly attempts to bootstrap acts allegedly committed in furtherance of the antecedent drug conspiracies and to characterize them as acts in furtherance of the money laundering conspiracies. The fact that acts in furtherance of the charged drug conspiracies — the delivery of drugs and payment therefor — were allegedly committed in the Northern District does not make them in furtherance also of the money laundering charges. True, Counts Twelve and Seventeen incorporated those allegations by reference, but that does not magically transform the acts committed in furtherance of drug conspiracies into acts in furtherance of money laundering conspiracies. Instead, the government is impermissibly attempting to parlay its specific venue allegations for the drug conspiracy charges into venue for the money laundering conspiracy charges. Absent allegations of specific acts that can logically be said to further the charged *money laundering* conspiracies, establishing venue for the underlying drug conspiracies does not suffice. *Compare United States v. Lanza*, No. 3:03cr00025, 2006 U.S. Dist. LEXIS 7134 at *9 (W.D. Va. Feb. 10, 2006) (wherein conspirators' actions in furtherance of a fraudulent scheme also constituted acts in furtherance of the money laundering conspiracy because they "demonstrated an intent to conceal the source and ownership of the funds and thus took the first step in the money laundering conspiracy").

Second, the government's attempt to characterize the drug purchases and payments from customers as "essential conduct elements" of the money laundering conspiracies runs afoul of the Supreme Court's holding in *Cabrales,* 524 U.S. at 9. As

explained by the Court in *Rodriguez-Moreno*, 526 U.S. at 280 n.4, the money laundering statutes do "not proscribe 'the anterior criminal conduct that yielded the funds allegedly laundered.'" Moreover, "[t]he existence of criminally generated proceeds was *a circumstance element* of the offense but the proscribed conduct — defendant's money laundering activity — occurred 'after the fact' of an offense begun and completed by others." *Id*. (emphasis added). The law is clear: the alleged receipt of prescription drugs and the corresponding payment by customers is the Northern District are "circumstance elements," not "essential conduct elements," of the money laundering conspiracies — and they do not confer venue in this district. And although an overt act is not an element of a money laundering conspiracy charge, such an act committed in the forum district and in furtherance of the money laundering conspiracy is necessary to confer proper venue. *Whitfield,* 543 U.S. at 217-18.

For these reasons, the indictment fails to allege facts in furtherance of the money laundering conspiracies within the meaning of § 1956(i)(2).

5. The Indictment Does Not Allege that FedEx Participated in the Transfer of Proceeds from this District to the District where the Financial or Monetary Transaction was Conducted

The government contends that venue lies in this district for Counts Twelve and Seventeen because FedEx participated in the transfer of the funds from the Northern District to the district in which the alleged money laundering transaction occurred. Govt. Opp. at 9. The main problem with this argument is that the indictment alleges no such thing. This is most conspicuous as to Count Twelve, which relates to the so-called Chhabra-Smoley Organization. The indictment includes no allegation that FedEx participated in the transfer of any funds to entities allegedly involved in that

organization. The government does not even attempt to proffer an argument as to that charge.

As to Count Seventeen, the government asks the Court to consider the money laundering charges in Count Eighteen as predicates for the alleged transfers of "proceeds" in Count Seventeen. But Count Seventeen does not even purport to incorporate the allegations in Count Eighteen. More importantly, Count Seventeen is plainly not alleged as a conspiracy to launder the same funds that were transferred as part of the alleged conspiracy in Count Eighteen. Count Seventeen, for example, alleges that FedEx received payments from numerous supposed co-conspirators. Dkt. 28 ¶ 110. But Count Eighteen relates only to transfers of COD payments to Superior Drugs (a.k.a. Creative Pharmacies). Dkt. 28 ¶¶ 116-119. Likewise, in Count Eighteen the total amount of funds allegedly transferred through FedEx from pharmacy customers in this district in Count Eighteen was $581.43, and the transfers occurred between the dates of February and August 2008. Dkt. 28 ¶ 120. By contrast, Count Seventeen alleges only two transactions — in February 3, 2009 and March 3, 2010 — that involved payments to FedEx after February 2008. The payments were from alleged co-conspirator Creative Pharmacies in the amounts of $8,582.24 and $532.41, respectively. Dkt. 28 ¶ 113. The indictment includes no allegation tracing the $518.43 in funds allegedly transferred from customers to pharmacies in Count Eighteen to the $9,114.38 in funds allegedly received by FedEx from Creative Pharmacy in Count Seventeen. Absent such tracing, there is no showing that FedEx participated in the transfer of "the proceeds" from this district within the meaning of § 1956(i)(1)(B).

## V. CONCLUSION

The defendants and alleged co-conspirators were not located in the Northern District of California. The money laundering transactions alleged in Counts Twelve and Seventeen did not begin, continue or end in this district. The indictment does not allege that any act in furtherance of the money laundering conspiracies was committed here. Nor does it allege that FedEx participated in the transfer of "the proceeds" from this district to the district where a money laundering transaction occurred. In these circumstances venue is improper on the face of the indictment, and a trial is not necessary to resolve the issue. For all the foregoing reasons, and those set forth in FedEx's opening motion papers, Counts Twelve and Seventeen should be dismissed.

Dated: February 24, 2016

Respectfully submitted,

ARGUEDAS, CASSMAN & HEADLEY, LLP

By: /s/

Ted Cassman
803 Hearst Avenue
Berkeley, CA 94710
(510) 845-3000

Counsel for Federal Express Corporation, FedEx Corporation and FedEx Corporate Services, Inc.